## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ROBERT DAVIS,**
and
**D. ETTA WILCOXON,**
Plaintiffs,

**Case No. 17-cv-**
**HON.**

v

**DETROIT DOWNTOWN DEVELOPMENT AUTHORITY, and**
**DETROIT BROWNFIELD REDEVELOPMENT AUTHORITY**,
Defendants.
_____/

ANDREW A. PATERSON (P18690)
Attorney for Plaintiffs
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com
_____/

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

NOW COME PLAINTIFFS, ROBERT DAVIS AND D. ETTA

WILCOXON, by and through their attorney, ANDREW A. PATERSON, and for

their Verified Complaint for Declaratory Judgment and Injunctive Relief

("**Verified Complaint**"), state the following:

## I.    NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367; and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

2. Plaintiff D. Etta Wilcoxon alleges in **Count I** of the Verified Complaint that a declaratory judgment should be issued by the Court, declaring that the Defendants, individually and collectively, have violated Plaintiff D. Etta Wicoxon's fundamental constitutional right to vote.  Defendants have so violated her right to vote by attempting to use tax revenue generated from the levy of the 18-mills Operating Millage **("Detroit Public Schools' Operating Millage")** that the voters of City of Detroit approved for operating purposes for the Detroit Public Schools for a different purpose without first obtaining voter approval from Plaintiff Wilcoxon and the other registered voters of the City of Detroit, in accordance with, and as required by Mich. Comp. Laws §211.24f of the General Property Tax Act, Mich. Comp. Laws § 380.1216 of the Revised School Code, and the Michigan Supreme Court's holding in *City of South Haven v Van Buren County Board of Commissioners*, 478 Mich. 518;734 NW2d 533 (2007).

3. Plaintiff Robert Davis alleges in **Count II** of the Verified Complaint that a declaratory judgment should be issued by the Court, declaring that the

Defendant, Detroit Brownfield Redevelopment Authority, has violated
Plaintiff Robert Davis' fundamental constitutional right to vote by
attempting to use tax revenue generated from the levy of the Wayne County
Parks Millage **("Wayne County Parks Millage")** that the registered voters
of Wayne County approved for maintaining public parks located in Wayne
County for a different purpose. Specifically, Defendant Detroit Brownfield
Redevelopment Authority seeks to use tax revenue generated from the levy
of the Wayne County Parks Millage to finance the construction costs
associated with the construction of the Detroit Pistons Corporate
Headquarters and Practice Facility.  Defendant Detroit Brownfield
Redevelopment Authority has so attempted to use tax revenue generated
from the levy of the Wayne County Parks Millage without first obtaining a
voter approval from Plaintiff Robert Davis and other registered voters of
Wayne County in accordance with, and as required by Mich. Comp. Laws
§211.24f of the General Property Tax Act, and the Michigan Supreme
Court's holding in *City of South Haven v Van Buren County Board of
Commissioners*, 478 Mich. 518;734 NW2d 533 (2007).

4. Plaintiffs allege in **Count III** of the Verified Complaint that injunctive relief
should be granted preliminarily, and permanently, enjoining the Defendants,
individually and collectively, from using or capturing any tax revenue

generated from the levy of the 18-mills Detroit Public Schools Operating Millage, or from using tax revenue generated from the levy of the Wayne County Parks Millage, to finance the costs associated with the construction of the Little Caesars Arena, or, the Detroit Pistons Corporate Headquarters and Practice Facility, without first obtaining voter approval from the Plaintiffs and other registered voters of the City of Detroit and the County of Wayne.

5. In **Count IV** of the Verified Complaint, Plaintiffs seek an award of attorney fees and costs pursuant to 42 U.S.C. § 1988.

## II.   JURISDICTION AND VENUE

6.  This Court has jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367.

7.  This Court has jurisdiction to render and issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

8.  Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391 because Plaintiffs are residents of the Eastern District of Michigan, and the actions giving rise to this Complaint all occurred within the Eastern District of Michigan.

### III.   PARTIES

10. Plaintiff, D. Etta Wilcoxon ("**Plaintiff Wilcoxon**"), is a registered and qualified elector of the City of Detroit, County of Wayne, State of Michigan. Plaintiff Wilcoxon is also a homeowner and property tax payer of the City of Detroit. (**See Plaintiff Wilcoxon's Affidavit attached hereto as Exhibit B**).

11. Plaintiff, Robert Davis[1] (**"Plaintiff Davis"**), is a registered and qualified elector of the City of Highland Park, County of Wayne, State of Michigan. Plaintiff Davis is also a well-known community and union activist, who has volunteered and been involved in many civic and political causes. (**See Plaintiff Davis' Affidavit attached hereto as Exhibit A**).

12. Defendant Detroit Downtown Development Authority ("**Defendant DDA**"), was organized and operates as a downtown development authority for the City of Detroit under the provisions of the Downtown Development

---

[1] On September 2, 2014, Plaintiff Davis pled guilty before Senior United States District Court Judge Arthur Tarnow ("**Judge Tarnow**") in Criminal Case No. 12-20224.  On December 18, 2014, Judge Tarnow sentenced Plaintiff Davis to serve 18 months at a minimum security camp in Montgomery, Alabama on the Maxwell Air Force Base ("**FPC Montgomery**").  Plaintiff Davis began serving his term of imprisonment at FPC Montgomery on March 13, 2015 and on July 1, 2016, Plaintiff was released from the custody and supervision of the Federal Bureau of Prisons **("BOP")**.

Authority Act, 1975 P.A. 197, being MCL § 125.1651 *et. seq.* (**"DDA Act"**).

13. Defendant DDA is governed by a board of directors, which consists of the following members: Hon. Mike Duggan, Mayor of the City of Detroit; Marvin Beaty, from Greektown Casino; Charles Beckham, with the City of Detroit; Austin Black, from City Living Detroit; David Blaszkiewicz, from the Detroit Investment Fund; Ehrlich Crain, from Roncelli; Sonya Delley, a Detroit resident; Melvin Hollowell, with the City of Detroit; Richard Hosey, a Detroit resident; James Jenkins, from Jenkins Construction; David Massaron, with the City of Detroit; John Naglick, with the City of Detroit; Stephen Ogden, from Rock Ventures.

14. The Defendant DDA, *inter alia*, seeks to correct and prevent deterioration in business districts; encourage historic preservation in business districts; authorize the acquisition and disposal of interests in real and personal property in business districts; authorize the creation and implementation of development plans in the in business districts; promote the economic growth of the in business districts; authorize the levy and collection of taxes; authorize the issuance of bonds and other evidences of indebtedness; and, authorize the use of tax increment revenues.

15. Defendant, Detroit Brownfield Redevelopment Authority ("**Defendant Brownfield Authority**"), is an authority organized and established under the Brownfield Redevelopment Financing Act, Mich. Comp. Laws §125.2651 *et. seq*., **("Brownfield Redevelopment Act")** and is governed by a nine-member board whose members are appointed by the Detroit City Council.

16. Defendant Brownfield Authority, *inter alia*, promotes the revitalization, redevelopment, and reuse of certain property, including, but not limited to, tax reverted, blighted, or functionally obsolete property; and it authorizes and permits the use of tax increment revenues with respect thereto.

## IV.   CAUSES OF ACTION

### COUNT I
**Plaintiff Wilcoxon's Fundamental Right to Vote has been Violated by the Defendants by their Attempt to Use Funds Generated by the Levy of the Voter Approved Detroit Public Schools' 18-Mills Operating Millage, for a Different Purpose, Without First Obtaining Voters Approval.**

17. Plaintiff Wilcoxon incorporates, repeats, and realleges the foregoing allegations as though they were fully set forth and stated herein.

18. This claim is brought pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act.

19. This claim seeks prospective declaratory and injunctive relief against Defendants DDA and Brownfield Authority.

20. On November 6, 2012, Plaintiff Wilcoxon and other registered and qualified voters of the City of Detroit voted in the general election to approve the renewal and restoration of the 18-mills Detroit Public Schools Operating Millage for school operating purposes only.  (**See Plaintiff Wilcoxon's Affidavit attached as Exhibit B**).

21. In accordance with Mich. Comp. Laws §§ 211.24f(1) and (2)(d) of the General Property Tax Act, the November 6, 2012 General Election ballot proposal for the renewal and restoration of the 18-mills Detroit Public Schools Operating Millage, fully disclosed "each local unit of government to which the revenue from that millage will be disbursed," and stated "[a] clear statement of the purpose for the millage."  (**See Sample Ballot from November 6, 2012 General Election containing Ballot Language for the 18-mills Detroit Public Schools Operating Millage attached as Exhibit C**).

22. The ballot language/proposal for the 2012 millage renewal and restoration of the 18-mills Detroit Public Schools Operating Millage stated:

> **Detroit Public School District Proposal S: Renewal and Restoration of School Operating Millage**
> This proposal would restore the prior authorization and allow the School District of the City of Detroit to continue to levy mills previously levied **for general operating purposes** on non-homestead property (mainly industrial and commercial real property and rental property) which expired with the 2012 tax levy. Owner occupied homes are exempt from the levy under

existing law.  Shall the School District of the City of Detroit, County of Wayne, Michigan be authorized to levy 18.00 mills ($18.00 per $1,000 of taxable value) by increasing the limitation on the amount of taxes which may be imposed on taxable property in the school district which is not otherwise exempt, of which 17.8308 mills constitute a renewal of authorization which expired with the 2012 levy and 0.1692 mill constitutes that portion reduced by the operation of the Headlee amendment, for ten (10) years, the years 2013 to 2022, inclusive, **to provide funds for operating expenses of School District**? It is estimated that 18.00 mills would raise approximately $80,900,000.00 for the School District in the first year that it is levied. YES or NO **(Emphasis supplied).**

**(See Sample Ballot from November 2012 General Election Containing Ballot Proposal attached as Exhibit C).**

23. In accordance with Mich. Comp. Laws §211.24f(2)(d) of the General Property Tax Act, the ballot proposal for the 2012 millage renewal and restoration of the 18-mills Detroit Public Schools Operating Millage clearly stated the purpose of the millage: **to provide funds for operating expenses of School District**. (**See Sample Ballot from November 2012 General Election Containing Ballot Proposal for 18-mills Detroit Public Schools Operating Millage attached as Exhibit C**).

24. Nonetheless, the Defendants are attempting to capture and use revenue generated from the levy of this millage, not for the Detroit Public Schools' operating purposes, but to finance the construction of the Little Caesars Arena and to finance the construction of the Detroit Pistons headquarters and

practice facility.  Defendants are so attempting to capture and use tax revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage without first obtaining voter approval from Plaintiff Wilcoxon and the other registered and qualified electors of the City of Detroit.

25. The Defendant DDA is not seeking the approval from Plaintiff Wilcoxon or from the other registered voters of the City of Detroit to use the revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage for a different purpose.

26. In accordance with the DDA Act, the Defendant DDA currently is only seeking approval from the Detroit City Council to approve the amendment to the Defendant DDA's Catalyst Development Plan and Tax Increment Financing Plan to issue additional tax increment revenue bonds under the DDA Act, in an aggregate principal amount sufficient to enable the Defendant DDA to finance $34,5000,000 of additional improvements to Little Caesars Arena to facilitate the move of the Detroit Pistons from the Palace of Auburn Hills to the new Little Caesars Arena.

27. The Defendant DDA has indicated that the issuance of the additional tax increment revenue bonds in the amount of $34.5 million is necessary in order to accommodate the basketball, administrative, operational and facility

requirements of the Detroit Pistons, in order to facilitate the relocation of the Detroit Pistons home venue for professional basketball games and related operations, from the Palace of Auburn Hills to the new Little Caesars Arena.

28. Under the DDA Act, the Defendant DDA *is* permitted to finance such improvements under a tax increment financing plan, which can capture the tax revenue generated by the levy of the 18-mills Detroit Public Schools' Operating Millage.

29. However, although the DDA Act so permits the Defendant DDA to capture the tax revenues from the levy of the 18-mills Detroit Public Schools' Operating Millage, such capture cannot occur without Plaintiff Wilcoxon and the other registered and qualified voters of the City of Detroit, first voting to approve such use of the tax revenue for a different purpose than that given in the ballot proposal presented to Plaintiff Wilcoxon and the other registered voters of the City of Detroit at the November 6, 2012 General Election.

30. Similarly, the Defendant Brownfield Authority is also seeking to capture revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage.

31. As with the Defendant DDA, the Defendant Brownfield Authority, in accordance with the Brownfield Redevelopment Financing Act, Mich.

Comp. Laws §125.2651 *et. seq*., is also seeking to capture revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage, without first obtaining approval from Plaintiff Wilcoxon and the other registered and qualified voters of the City of Detroit.

32. In accordance with the Brownfield Redevelopment Financing Act, Mich. Comp. Laws §125.2651 *et. seq*., the Defendant Brownfield Authority is seeking to finance the construction of the Detroit Pistons' Corporate Headquarters and Practice Facility with funds captured from the levy of the 18-mills Detroit Public Schools' Operating Millage.

33. Like the Defendant DDA, as of the date of the filing of this complaint, the Defendant Brownfield Authority is also awaiting approval from the Detroit City Council to proceed with their development plans and approval to capture and use the revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage to finance the construction of the Detroit Pistons' Corporate Headquarters and Practice Facility.

34. However, the capture and use of revenues generated by the levy of the 18-mills Detroit Public Schools' Operating Millage cannot be achieved by the Defendants without first obtaining voter approval from Plaintiff Wilcoxon and the other registered qualified and registered voters of the City of Detroit.

35. Mich. Comp. Laws §211.24f(1),(2) of the General Property Tax Act states:

Sec. 24f.

(1) If a taxing unit submits a proposal on the question of authorizing the issuance of bonds, imposing a new millage, or increasing or renewing an existing millage, except an ad valorem special assessment millage for police or fire protection under 1951 PA 33, MCL 41.801 to 41.813, **the ballot shall fully disclose each local unit of government to which the revenue from that millage will be disbursed**. As used in this subsection:

> (a) "Local unit of government" means a county, city, village, township, school district, intermediate school district, community college district, public library, or **local authority created under state law**.
>
> *************

 (2) In addition to the requirement set forth in subsection (1) and any other requirement provided by law, when submitting a proposal on the question of authorizing a millage rate to be levied under this act, the ballot shall state all of the following:

> (a) The millage rate to be authorized.
> (b) The estimated amount of revenue that will be collected in the first year that the millage is authorized and levied.
> (c) The duration of the millage in years.
> (d) **A clear statement of the purpose for the millage**.
> (e) A clear statement indicating whether the proposed millage is a renewal of a previously authorized millage or the authorization of a new additional millage. (Emphasis supplied).

36. As noted, the renewal and restoration of the 18-mills Detroit Public

Schools' Operating Millage was submitted to Plaintiff Wilcoxon, and to

the other registered and qualified electors of the City of Detroit, at the November 6, 2012 General Election, in accordance with Mich. Comp. Laws §211.24f of the General Property Tax Act. (**See Sample Ballot from November 6, 2012 General Election attached as Exhibit C**).

37. At the November 6, 2012 General Election, Plaintiff Wilcoxon voted yes to approve the renewal and restoration of the 18-mills Detroit Public Schools' Operating Millage. (**See Plaintiff Wilcoxon's affidavit attached as Exhibit B**). The 18-mills Detroit Public Schools' Operating Millage was approved by a majority of the voters in the City of Detroit who voted at the November 6, 2012 General Election.

38. Therefore, pursuant to Mich. Comp. Laws §211.24f(2)(d), the revenues generated from the 18-mills Detroit Public Schools' Operating Millage can only be used for the specific purpose identified in the ballot language, which is exclusively for school operating purposes for the Detroit Public Schools. (**See Sample Ballot from November 6, 2012 General Election attached as Exhibit C**).

39. If the Defendants desire to capture and use any tax revenues generated from the 18-mills Detroit Public Schools' Operating Millage for a different purpose other than for school operating purposes for the Detroit Public Schools, Defendants must first obtain voter approval to use these

tax funds from Plaintiff Wilcoxon and the other registered and qualified voters in the City of Detroit pursuant to Mich. Comp. Laws §211.24f of the General Property Tax Act.

40. The issue of whether voter approval is required for spending tax revenue for a different purpose than that previously approved by the electorate, was determined by the Michigan Supreme Court in *South Haven v Van Buren Co. Bd. of Comm'rs*, 478 Mich. 518; 734 NW2d 533(2007).   The Michigan Supreme Court, applying its established rules for statutory construction to Mich. Comp. Laws §211.24f of the General Property Tax Act, held:

> "Under the General Property Tax Act, MCL 211.1 *et seq.,* when a millage proposal is submitted to the electors for approval, the ballot must "fully disclose each local unit of government to which the revenue from that millage will be disbursed," and must state "[a] clear statement of the purpose for the millage." This statute does not expressly preclude using for one purpose tax revenue specifically approved for a different purpose. However, a fundamental rule of statutory construction is that the Legislature did not intend to do a useless thing.  **If funds that voters approved for the purpose stated on the ballot could be redirected to another purpose without seeking new approval, there would be no reason for including the purpose on the ballot. Indeed, voters could be lulled into voting for a millage for a popular purpose, only to have the funds then used for something they may well have never approved.  This is contrary to the General Property Tax Act… While no court has warrant to violate MCL 224.20b**

**ordering distribution contrary to that statute, it likewise may not violate MCL 211.24f by ordering these funds to be used for a purpose not approved by the voters.**" [*South Haven v Van Buren Co. Bd. of Comm'rs*, 478 Mich at 531-533]. (Emphasis supplied).

41. No party has scheduled an election for Plaintiff Wilcoxon and the other registered and qualified electors of the City of Detroit to vote on the question of whether to approve the use of revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage for the purpose of financing the additional $34.5 million to accommodate the renovations to the Little Caesars Arena for the Detroit Pistons nor for the financing of the Detroit Pistons' Headquarters and Practice Facility.

42. The holding and conclusion reached by the Michigan Supreme Court in the *South Haven v Van Buren Co. Bd. of Comm'rs* case is buttressed by Mich. Comp. Laws §380.1216 of the Revised School Code.  Mich. Comp. Laws §380.1216 of the Revised School Code states:

"Except as provided in the revised municipal finance act, 2001 PA 34, MCL 141.2101 to 141.2821, as provided in section 15 of the state school aid act of 1979, MCL 388.1615, or for purposes authorized under section 1211(5), **money raised by tax shall not be used for a purpose other than that for which it was raised *without the consent of a majority of the school electors of the district voting on the question at a regular or special school election*.**"  (Emphasis supplied).

43. Plaintiff Wilcoxon, as a registered voter in the City of Detroit, has a fundamental constitutional right to vote on whether or not the Defendants should be permitted and allowed to capture and use revenues generated from the 18-mills Detroit Public Schools' Operating Millage, to finance the construction of Little Caesars Arena and the Detroit Pistons' Headquarters and Practice Facility.

44. "Section 1983 provides a cause of action against any person who, acting under color state law, abridges rights created by the [United States] Constitution or laws of the United States." *Sandusky Co. Democratic Party v Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) (citing *Maine v Thiboutot*, 448 U.S. 1, 4-8, 100 S. Ct. 2502, 65 L.Ed.2d 555 (1980)).

45. "The U.S. Constitution protects an individual's right to vote during an election." *Lawson v Shelby County, TN*, 211 F.3d 331, 336 (6th Cir. 2000).

46. "Members of the public, however, have a 'strong interest in exercising the fundamental political right to vote.'" *Hunter v Hamilton County Bd of Elections*, 635 F.3d 219, 244 (6th Cir. 2011) (quoting *Purcell v Gonzalez*, 549 U.S. 1, 4, 127 S. Ct. 5, 166 L.Ed.2d 1 (2006)).

47. "That interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful." *Hunter v Hamilton County Bd of Elections*, 635 F.3d 219, 244 (6th Cir. 2011).

48. "The right to vote is a fundamental right, 'preservative of all rights.'"

*League of Women Voters v Brunner*, 548 F.3d 463, 476 (6th Cir. 2008)

(quoting *Yick Wo v Hopkins*, 118 U.S. 356, 370 (1886)).

49. "The right to vote is a "precious" and "fundamental" right."  *Obama for*

*America v Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (citing *Harper v Va.*

*State Bd of Elections*, 383 U.S. 663, 670, 86 S. Ct. 1079, 16 L.Ed.2d 169

(1966)).

50. "Other rights, even the most basic, are illusory if the right to vote is

undermined."  *Wesberry v Sanders*, 376 U.S. 1, 17, 84 S. Ct. 526, 11

L.Ed.2d 481 (1964).

51. "Our Constitution accords special protection for the fundamental right of

voting."  *Northeast Ohio Coalition for Homeless v Husted*, 696 F.3d 580,

591 (6th Cir. 2012).

52. Because "the right to exercise the franchise in a free and unimpaired manner

is preservative of other basic civil and political rights, any alleged

infringement of the right of citizens to vote must be carefully and

meticulously scrutinized."  *Reynolds v Sims,* 377 U.S. 533, 562 (1964).

53. Defendants, individually and collectively, are denying Plaintiff Wilcoxon

her fundamental right to vote. They are doing so by seeking to capture and

use tax revenue generated from the levy of the 18-mills Detroit Public

Schools' Operating Millage for purposes other than that for which the millage levy was approved.  They are doing so without first receiving "consent of a majority of the school electors" in the City of Detroit as Mich. Comp. Laws §380.1216 of the Revised School Code and Mich. Comp. Laws §211.24f of the General Property Tax Act so require.  (**See Plaintiff Wilcoxon's affidavit attached hereto as Exhibit B**).

54. Plaintiff Wilcoxon desires to exercise her fundamental constitutional right to vote and desires to vote not to approve the use of tax revenue generated from the 18-mills Detroit Public Schools' Operating Millage to finance the construction of Little Caesars Arena or the construction of the new Detroit Pistons' Headquarters and Practice Facility.  (**See Plaintiff Wilcoxon's affidavit attached as Exhibit B).**

55. As noted, Defendants, as of the date of the filing of this complaint, have not secured the required approval of the Detroit City Council to proceed with their respective development projects.

56. Accordingly, it is imperative that the Court take immediate action to ensure that the law is properly followed by the Defendants, and that Plaintiff Wilcoxon's fundamental constitutional right to vote is not abridged or infringed by the Defendants.

**COUNT II**
**Plaintiff Davis' Fundamental Right to Vote has been Violated by**
**the Defendant Brownfield Authority's Attempt to Use Funds**
**Generated by the Tax Levy of the Wayne County Parks Millage**
**for a Different Purpose Without First Obtaining Voter Approval.**

57. Plaintiff Davis incorporates, repeats, and realleges the foregoing allegations as though they were fully set forth and stated herein.

58. This claim is brought pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act.

59. This claim seeks prospective declaratory and injunctive relief against Defendant Brownfield Authority.

60. On August 2, 2016, Plaintiff Davis and other registered and qualified voters of Wayne County, voted to approve the continuation of the Wayne County Parks Millage, which tax levy was dedicated for the purpose of financing improvements to certain parks located within 43 communities in Wayne County.  (**See Plaintiff Davis' Affidavit attached as Exhibit A**).

61. In accordance with Mich. Comp. Laws §§ 211.24f(1) and (2)(d) of the General Property Tax Act, the ballot proposal for the continuation of the Wayne County Parks Millage fully disclosed "each local unit of government to which the revenue from that millage will be disbursed," and it stated "[a] clear statement of the purpose for the millage."  (**See Sample Ballot from**

**August 2, 2016 Primary Election that Contains Ballot Language for**

**Wayne County Parks Millage attached hereto as Exhibit D**).

62. The August 2, 2016 ballot language for the Wayne County Parks Millage

Continuation stated the following:

> **Proposition P- Parks Millage Continuation**
> To continue the millage authorized in 2010, shall Wayne
> County levy this millage at the estimated 2015 rollback rate of
> .2459 (about 25 cents per $1,000 of taxable valuation) for five
> more years (2016 through 2020) to continue **to improve and
> operate several parks and related facilities**, including Hines
> Park, Elizabeth Park, Chandler Park, and improvements to
> municipal parks in the 43 communities as provided in an
> implementing ordinance through an annual allocation by
> commission district of the greater of $50,000 or 15% of the
> total funds generated from that district, on the condition that,
> for any year for which this continued levy would be imposed,
> Wayne County must budget from other sources an amount
> equal to its 1995-1996 fiscal year appropriation for parks?  This
> renewal is projected to generate $9,865,514 in 2016. YES or
> NO
> **(Emphasis supplied. See Sample Ballot from August 2, 2016
> Primary Election Containing Ballot Proposal for Wayne Co Parks
> Millage attached as Exhibit D).**

63. The August 2, 2016 ballot language for the continuation Wayne County

Parks Millage clearly stated the purpose of the millage: to finance

improvements to certain parks within Wayne County and the City of Detroit.

64. However, the Defendant Brownfield Authority is seeking to capture and use

tax revenue generated from the levy of the Wayne County Parks Millage to

finance the construction of the Detroit Pistons' Corporate Headquarters and Practice Facility.

65. The Defendant Brownfield Authority, in accordance with the Brownfield Redevelopment Financing Act, Mich. Comp. Laws §125.2651 *et. seq.*, is seeking to capture revenue generated from the levy of the Wayne County Parks Millage without first obtaining voter approval from Plaintiff Davis and other registered and qualified voters of Wayne County.

66. The capture and use of tax revenues generated by the levy of the Wayne County Parks Millage cannot be achieved by the Defendant Brownfield Authority without first obtaining voter approval from Plaintiff Davis and the other registered qualified and registered voters of Wayne County.

67. Mich. Comp. Laws §211.24f(1),(2) of the General Property Tax Act states:

> Sec. 24f.
>
> (1) If a taxing unit submits a proposal on the question of authorizing the issuance of bonds, imposing a new millage, or increasing or renewing an existing millage, except an ad valorem special assessment millage for police or fire protection under 1951 PA 33, MCL 41.801 to 41.813, the ballot shall fully disclose **each local unit of government to which the revenue from that millage will be disbursed**. As used in this subsection:
>
> > (a) "Local unit of government" means a county, city, village, township, school district, intermediate school district, community college district, public library, **or local authority created under state law**.

**************

(2) ***In addition to the requirement set forth in subsection (1) and any other requirement provided by law*, when submitting a proposal on the question of authorizing a millage rate to be levied under this act, the** *ballot shall state all of the following***:**

      (a) The millage rate to be authorized.

      (b) The estimated amount of revenue that will be collected in the first year that the millage is authorized and levied.

      (c) The duration of the millage in years.

      **(d) A clear statement of the purpose for the millage.**

      (e) A clear statement indicating whether the proposed millage is a renewal of a previously authorized millage or the authorization of a new additional millage. (Emphasis supplied).

68. The continuation of the Wayne County Parks Millage was submitted to Plaintiff Davis and to the other registered and qualified electors of Wayne County at the August 2, 2016 Primary Election in accordance with Mich. Comp. Laws §211.24f of the General Property Tax Act.  (**See Sample Ballot from August 2, 2016 Primary Election attached as Exhibit D**).

69. At the August 2, 2016 Primary Election, Plaintiff Davis voted yes to approve the continuation of the Wayne County Parks Millage.  (**See Plaintiff Davis' affidavit attached as Exhibit A**).  The Wayne County Parks Millage was approved by a majority of Wayne County registered voters that voted in the August 2, 2016 Primary Election.

70. Pursuant to Mich. Comp. Laws §211.24f(2)(d), the tax revenues generated by the levy of the Wayne County Parks Millage can only be used for the specific purpose identified in the ballot language, which was exclusively for improvements of parks located in 43 communities within Wayne County and the City of Detroit.

71. The Defendant Brownfield Authority desires to capture and use tax revenue generated by the levy of the Wayne County Parks Millage for the purpose of financing the construction of Detroit Pistons' Corporate Headquarters and Practice Facility.

72. However, the Defendant Brownfield Authority must first obtain approval by a vote of Plaintiff Davis and the other registered and qualified voters of Wayne County pursuant to Mich. Comp. Laws §211.24f of the General Property Tax Act.

63. The issue of whether voter approval is required for spending tax revenue for a different purpose than that previously approved by the electorate, was determined by the Michigan Supreme Court *South Haven v Van Buren Co. Bd. of Comm'rs*, 478 Mich. 518; 734 NW2d 533(2007).   The Michigan Supreme Court, applying its established rules for statutory construction to Mich. Comp. Laws §211.24f of the General Property Tax Act, held:

> "Under the General Property Tax Act, MCL 211.1 *et seq.,* when a millage proposal is submitted to the electors for approval, the

ballot must "fully disclose each local unit of government to which the revenue from that millage will be disbursed," and must state "[a] clear statement of the purpose for the millage." This statute does not expressly preclude using for one purpose tax revenue specifically approved for a different purpose. However, a fundamental rule of statutory construction is that the Legislature did not intend to do a useless thing. **If funds that voters approved for the purpose stated on the ballot could be redirected to another purpose without seeking new approval, there would be no reason for including the purpose on the ballot. Indeed, voters could be lulled into voting for a millage for a popular purpose, only to have the funds then used for something they may well have never approved. This is contrary to the General Property Tax Act… While no court has warrant to violate MCL 224.20b ordering distribution contrary to that statute, it likewise may not violate MCL 211.24f by ordering these funds to be used for a purpose not approved by the voters.**" [*South Haven v Van Buren Co. Bd. of Comm'rs*, 478 Mich at 531-533]. (Emphasis supplied).

64. No party has scheduled an election for Plaintiff Davis and the other registered and qualified electors of Wayne County to vote whether or not to approve the use of the tax funds revenue from the Wayne County Parks Millage levy for the purpose of financing the Detroit Pistons' Corporate Headquarters and Practice Facility.

65. Plaintiff Davis, as a registered voter of the City of Highland Park, which is located within Wayne County, has a fundamental right to vote on the question of whether or not the Defendant Brownfield Authority should be

permitted and allowed to capture and use the tax revenue generated by the
levy of the Wayne County Parks Millage to finance the construction of the
new Detroit Pistons' Corporate Headquarters and Practice Facility.

66. "Section 1983 provides a cause of action against any person who, acting
under color state law, abridges rights created by the [United States]
Constitution or laws of the United States." *Sandusky Co. Democratic Party
v Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) (citing *Maine v Thiboutot*,
448 U.S. 1, 4-8, 100 S. Ct. 2502, 65 L.Ed.2d 555 (1980)).

67. "The U.S. Constitution protects an individual's right to vote during an
election." *Lawson v Shelby County, TN*, 211 F.3d 331, 336 (6th Cir. 2000).

68. "Members of the public, however, have a 'strong interest in exercising the
fundamental political right to vote.'" *Hunter v Hamilton County Bd of
Elections*, 635 F.3d 219, 244 (6th Cir. 2011) (quoting *Purcell v Gonzalez*,
549 U.S. 1, 4, 127 S. Ct. 5, 166 L.Ed.2d 1 (2006)).

69. "That interest is best served by favoring enfranchisement and ensuring that
qualified voters' exercise of their right to vote is successful." *Hunter v
Hamilton County Bd of Elections*, 635 F.3d 219, 244 (6th Cir. 2011).

70. "The right to vote is a fundamental right, 'preservative of all rights.'"
*League of Women Voters v Brunner*, 548 F.3d 463, 476 (6th Cir. 2008)
(quoting *Yick Wo v Hopkins*, 118 U.S. 356, 370 (1886)).

71. "The right to vote is a "precious" and "fundamental" right." *Obama for America v Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (citing *Harper v Va. State Bd of Elections*, 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966)).

72. "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

73. "Our Constitution accords special protection for the fundamental right of voting." *Northeast Ohio Coalition for Homeless v Husted*, 696 F.3d 580, 591 (6th Cir. 2012).

74. Because "the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v Sims,* 377 U.S. 533, 562 (1964).

75. Defendant Brownfield Authority is denying Plaintiff Davis his fundamental right to vote by its unlawful attempt to capture and use tax revenue generated from the levy of the Wayne County Parks Millage for purposes other than that for which the millage was approved by voters, without the Defendant Brownfield Authority first receiving approval from Plaintiff Davis and the other registered electors of Wayne County as Mich. Comp.

Laws §211.24f of the General Property Tax Act requires.  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A**).

76. Plaintiff Davis desires to exercise his fundamental constitutional right to vote and to vote not to so approve the use of tax revenue generated from the Wayne County Parks Millage levy to finance the construction of the new Detroit Pistons' Corporate Headquarters and Practice Facility.  (**See Plaintiff Davis' affidavit attached as Exhibit A).**

77. Defendant Brownfield Authority, as of the date of the filing of this complaint, has not secured the required approval of the Detroit City Council to authorize the capture and spending of tax revenue from the levy of the Wayne County Parks Millage.

78. It is therefore imperative that the Court take immediate action to ensure that the law is properly followed by the Defendant Brownfield Authority, so that Plaintiff Davis' fundamental constitutional right to vote is not abridged or infringed by the Defendant Brownfield Authority's unlawful actions.

## COUNT III

**Defendants DDA and Brownfield Authority Shall Be
Preliminarily and Permanently Enjoined From Capturing And
Using Revenues Generated from the Special Millage levies in
Violation of Mich. Comp. Laws §§211.24f, 380.1216.**

79. Plaintiffs Wilcoxon and Davis incorporate, repeat, and reallege the foregoing

allegations as though they were fully set forth and stated herein.

80. This claim is brought pursuant to 42 U.S.C. § 1983, and the Federal

Declaratory Judgment Act.

81. This clam seeks prospective injunctive relief against Defendants DDA and

Brownfield Authority.

82. Acting under color of law and pursuant to their customs, policies and

practices, the Defendants DDA and Brownfield Authority are engaging in

conduct that violates Plaintiffs Wilcoxon's and Davis' fundamental

constitutional right to vote.  (**See Plaintiffs' affidavits attached hereto as**

**Exhibits A-B**).

83. Plaintiffs Davis and Wilcoxon independently seek to enjoin, preliminarily

and permanently, Defendants DDA and Brownfield Authority, from

capturing and using any tax revenue generated from any special millages,

without first obtaining approval from the registered electors of the City of

Detroit and/or Wayne County as required by Mich. Comp. Laws §§211.24f and 380.1216.

84. Plaintiffs Davis and Wilcoxon will suffer irreparable harm to their constitutional right to vote if Defendants are permitted to capture and use revenues generated from the 18-mills School Operating Millage for the Detroit Public Schools and the Wayne County Park Millage for different purposes, without first allowing Plaintiffs and the other registered and qualified electors to vote on the question on whether or not to permit said tax revenue generated from the levy of said millages to be used to finance the construction of Little Caesars Arena and the construction of the new Detroit Pistons' Corporate Headquarters and Practice Facility.

## COUNT IV

### Plaintiffs Shall Be Awarded Court Costs and Attorney Fees Under 42 U.S.C. § 1988.

85. Plaintiffs Davis and Wilcoxon incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

86. This claim is brought pursuant to 42 U.S.C. §1988.

87. Plaintiffs Davis and Wilcoxon shall be awarded their attorney's fees and costs pursuant to 42 U.S.C. § 1988 for any relief granted for any of the counts properly pled and alleged herein against all of the named Defendants. See *Déjà vu of Nashville Inc v Metro Gov't of Nashville and Davison*

*County*, 421 F.3d 417 (6th Cir. 2005; and see also, *Berger v City of Mayfield Heights*, 265 F.3d 399, 406-407 (6th Cir. 2001).

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiffs Wilcoxon and Davis pray that this Honorable Court GRANT this requested relief:

A. Issue a declaratory judgment declaring that Mich. Comp. Laws § 211.24f requires the Defendants to obtain prior approval from a vote of the electors prior to capturing and using revenue from the levy of the 18-mills Detroit Public Schools' Operating Millage and the Wayne County Parks Millage for a different purpose.

B. Issue a declaratory judgment declaring that Mich. Comp. Laws § 380.1216 of the Revised School Code requires the Defendants to obtain prior approval from a vote of the electors prior to capturing and using revenue from the levy of the 18-mills Detroit Public Schools' Operating Millage for a different purpose.

C. Issue a declaratory judgment declaring that the Plaintiffs have a fundamental constitutional right to vote on the question of whether any tax revenues generated from the levy of the 18-mills Detroit Public Schools' Operating Millage and the Wayne County Parks Millage can be used by a governmental entity for a different purpose.

D. Issue a declaratory judgment declaring that it will be a violation of Plaintiffs' fundamental constitutional right to vote if Defendants are permitted to capture and use tax revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage and/or the Wayne County Parks Millage, without first obtaining approval from

the Plaintiffs and the other registered and qualified voters of the City of Detroit and Wayne County to use said funds for the sought different purposes.

E. Issue injunctive relief enjoining Defendants from capturing and using any tax revenue generated from the 18-mills Detroit Public Schools' Operating Millage and the Wayne County Parks Millage, without first obtaining approval from the registered voters of the City of Detroit and Wayne County authorizing the use of such funds for the sought different purposes.

F. Award Plaintiffs Davis and Wilcoxon their attorney fees and costs pursuant to 42 U.S.C. § 1988 against all of the named Defendants.

G. Grant any further relief the Court deems appropriate, just and proper.


Dated: June 1, 2017                          Respectfully submitted,

                                             */s/ ANDREW A. PATERSON*
                                             ANDREW A. PATERSON (P18690)
                                             Attorney for Plaintiffs
                                             2893 E. Eisenhower Pkwy
                                             Ann Arbor, MI 48108
                                             (248) 568-9712
                                             aap43@outlook.com