## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ROBERT DAVIS,**
and
**D. ETTA WILCOXON,**
               Plaintiffs,                    **Case No. 17-cv-11742**
                                        **HON. MARK A. GOLDSMITH**

v

**DETROIT DOWNTOWN DEVELOPMENT AUTHORITY,**
**DETROIT BROWNFIELD REDEVELOPMENT AUTHORITY**,
**DETROIT CITY COUNCIL**,
**ERIC SABREE**, in his official capacity as the duly elected Wayne County Treasurer, **CHRISTA MCCLELLAN**, in her official capacity as Treasurer of the City of Detroit, **MIKE DUGGAN**, in his official capacity as the Chair of the Downtown Development Authority Board of Directors, and
**THOMAS LEWAND**, in his official capacity as stand-in Chair of the Downtown Development Authority Board of Directors,
               Defendants.

_____/

Andrew A. Paterson (P18690)
Attorney for Plaintiffs
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com

KOTZ SANGSTER WYSOCKI P.C.
Jeffrey M. Sangster (P30791)
R. Edward Boucher (P57251)
Dennis K. Egan        (P29116)
Attorneys for Defendants
400 Renaissance Center, Suite 3400
Detroit, MI 48243
(313) 259-8300

FINK + ASSOCIATES LAW
David H. Fink (P28235)
Darryl Bressack (P67820)
Attorneys for Detroit Downtown
Development Authority and Detroit
Brownfield Redevelopment Authority
38500 Woodward Ave.; Suite 350
Bloomfield Hills, Michigan 48304
Tel: 248.971.2500; Fax: 248.971.2600
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com

_____/

## <u>FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF</u>

NOW COME PLAINTIFFS, ROBERT DAVIS AND D. ETTA WILCOXON, by and through their attorney, ANDREW A. PATERSON, and for their First Amended Verified Complaint for Declaratory Judgment and Injunctive Relief ("**Amended Verified Complaint**"), state the following:

## I.   <u>PLAINTIFFS' RIGHT TO FILE AMENDED COMPLAINT</u>

1. Pursuant to Fed. R. Civ. P. 15(a)(1)(A), Plaintiffs hereby filed their First Amended Complaint within 21 days of serving Plaintiffs' original Verified Complaint of the original Defendants Detroit Downtown Development Authority and Detroit Brownfield Redevelopment Authority. (Docket No. 14).

## II.   **NATURE OF PLAINTIFF'S CLAIMS**

2. Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367; and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

3. Plaintiff D. Etta Wilcoxon alleges in **Count I** of the Amended Verified Complaint that a **declaratory judgment** should be issued by the Court, declaring that the Defendants, individually and collectively, have violated Plaintiff D. Etta Wilcoxon's fundamental constitutional right to vote. Defendants have so violated her right to vote by attempting to use tax revenue generated from the levy of the 18-mills Operating Millage (**"Detroit**

**Public Schools' Operating Millage")** that the voters of City of Detroit

approved for operating purposes for the Detroit Public Schools for a

different purpose, without first obtaining voter approval from Plaintiff

Wilcoxon and the other registered voters of the City of Detroit, in

accordance with, and as required by Mich. Comp. Laws §211.24f of the

General Property Tax Act; by Mich. Comp. Laws § 380.1216 of the Revised

School Code; and in accordance with the Michigan Supreme Court's holding

in *City of South Haven v Van Buren County Board of Commissioners*, 478

Mich. 518;734 NW2d 533 (2007).

4. Plaintiff Robert Davis alleges in **Count II** of the Amended Verified

   Complaint that a **declaratory judgment** should be issued by the Court,

   declaring that the Defendant, Detroit Brownfield Redevelopment Authority,

   has violated Plaintiff Robert Davis' fundamental constitutional right to vote

   by attempting to use tax revenue generated from the levy of the Wayne

   County Parks Millage **("Wayne County Parks Millage")** that the registered

   voters of Wayne County approved, for maintaining public parks located in

   Wayne County, for a different purpose. Specifically, Defendant Detroit

   Brownfield Redevelopment Authority seeks to use tax revenue generated

   from the levy of the Wayne County Parks Millage to finance the

   construction costs associated with the construction of the Detroit Pistons

Corporate Headquarters and Practice Facility as described in the 2017

Detroit Pistons Performance Facility and Headquarters Community Benefits

Agreement Report and the proposed Memorandum of Understanding

contained therein, for the Detroit Pistons Corporate Headquarters and

Practice Facility.  Defendant Detroit Brownfield Redevelopment Authority

has so attempted to use tax revenue generated from the levy of the Wayne

County Parks Millage, without first obtaining a voter approval from Plaintiff

Robert Davis and other registered voters of Wayne County, in accordance

with, and as required by, Mich. Comp. Laws §211.24f of the General

Property Tax Act and the Michigan Supreme Court's holding in *City of

South Haven v Van Buren County Board of Commissioners*, 478 Mich.

518;734 NW2d 533 (2007).

5. Plaintiff D. Etta Wilcoxon alleges in **Count III** of the Amended Verified

Complaint that a **declaratory judgment** should be issued by the Court,

declaring that the Defendants, individually and collectively, violated

Plaintiff Wilcoxon's substantive due process rights by unlawfully using

revenue generated from the tax levy of the Detroit Public Schools' 18-mills

School Operating Millage, without first obtaining approval from Plaintiff

Wilcoxon and other registered voters for the City of Detroit in accordance

Mich. Comp. Laws § 380.1216.

6. Plaintiffs Wilcoxon and Davis allege in **Count IV** of the Amended Verified
Complaint that **injunctive relief** should be granted preliminarily, and
permanently, enjoining the Defendants, individually and collectively, from
using or capturing any tax revenue generated from the levy of the 18-mills
Detroit Public Schools Operating Millage, or from using tax revenue
generated from the levy of the Wayne County Parks Millage, to finance: the
costs associated with the construction of the Little Caesars Arena: or, as
described in the 2017 Detroit Pistons Performance Facility and Headquarters
Community Benefits Agreement Report and the proposed Memorandum of
Understanding contained therein, for the Detroit Pistons Corporate
Headquarters and Practice Facility, without first obtaining voter approval
from the Plaintiffs and other registered voters of the City of Detroit and the
County of Wayne.

7. Plaintiff Robert Davis alleges in **Count V** of the Amended Verified
Complaint that a **declaratory judgment** should be issued by the Court
declaring that the Defendant DDA violated Plaintiff Robert Davis'
procedural due process rights (as set forth in the Michigan Constitution of
1963, as amended) by failing and refusing to provide Plaintiff Robert Davis
with a copy of the Defendant DDA's Amended Tax Increment Finance Plan,
all in accordance with Mich. Const. 1963, art. 9, § 23.

8. In **Count VI** of the Amended Verified Complaint, Plaintiffs seek an **award of attorney fees and costs** pursuant to 42 U.S.C. § 1988.

9. Plaintiff Robert Davis alleges in **Count VII** of the Amended Verified Complaint that a **declaratory judgment** should be issued by the Court declaring that the Defendant Detroit City Council cannot proceed with approving the Defendant DDA's Amended Catalyst and Tax Increment Plans to finance: the costs associated with the construction of the Little Caesars Arena: or, as described in the 2017 Detroit Pistons Performance Facility and Headquarters Community Benefits Agreement Report and the proposed Memorandum of Understanding contained therein, for the Detroit Pistons Corporate Headquarters and Practice Facility, because proper notice thereof was not provided to the appropriate  governing bodies of the taxing jurisdictions as required under Mich. Comp. Laws §§ 125.1668 and 125.1669 of the DDA Act.

10. Plaintiffs Wilcoxon and Davis allege in **Count VIII** of the Amended Verified Complaint that a **writ of mandamus** shall be issued compelling the Defendants Downtown Development Authority, Detroit Brownfield Redevelopment Authority, Wayne County Treasurer, and Detroit City Treasurer, to reimburse to taxpayers any collected taxes that were unlawfully used to finance to finance: the costs associated with the construction of the

Little Caesars Arena: or, as described in the 2017 Detroit Pistons

Performance Facility and Headquarters Community Benefits Agreement

Report and the proposed Memorandum of Understanding contained therein,

for the Detroit Pistons Corporate Headquarters and Practice Facility

11. Plaintiffs Wilcoxon and Davis allege in **Count IX** of the Amended Verified

Complaint that Defendants Mike Duggan, Thomas Lewand, and the

Downtown Development Authority engaged in a continuing RICO

enterprise that caused injury to Plaintiffs Wilcoxon's and Davis' property.

12. Plaintiffs Wilcoxon and Davis allege in **Count X** of the Amended Verified

Complaint that Plaintiffs should be awarded damages in accordance with 18

U.S.C. §1964(c).

### III.   JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C.

1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367.

14. This Court has jurisdiction to render and issue a declaratory judgment

pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

15. This Court has jurisdiction over Plaintiffs' civil RICO claims pursuant to 18

U.S.C. §§1964(a) and 1965(a).

16. Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391

because Plaintiffs are residents of the Eastern District of Michigan, and the

actions giving rise to this Complaint all occurred within the Eastern District of Michigan.

## IV.   PARTIES

16. Plaintiff, D. Etta Wilcoxon ("**Plaintiff Wilcoxon**"), is a registered and qualified elector of the City of Detroit, County of Wayne, State of Michigan. Plaintiff Wilcoxon is also a homeowner and property tax payer of the City of Detroit. (**See Plaintiff Wilcoxon's Affidavit attached hereto as Exhibit B**).

17. Plaintiff, Robert Davis[1] (**"Plaintiff Davis"**), is a registered and qualified elector of the City of Highland Park, County of Wayne, State of Michigan. Plaintiff Davis is also a well-known community and union activist, who has volunteered and been involved in many civic and political causes. (**See Plaintiff Davis' Affidavit attached hereto as Exhibit A**).

18. Defendant Detroit Downtown Development Authority ("**Defendant DDA**"), was organized and operates as a downtown development authority for the City of Detroit under the provisions of the Downtown Development

---

[1] On September 2, 2014, Plaintiff Davis pled guilty before Senior United States District Court Judge Arthur Tarnow ("**Judge Tarnow**") in Criminal Case No. 12-20224. On December 18, 2014, Judge Tarnow sentenced Plaintiff Davis to serve 18 months at a minimum security camp in Montgomery, Alabama on the Maxwell Air Force Base ("**FPC Montgomery**"). Plaintiff Davis began serving his term of imprisonment at FPC Montgomery on March 13, 2015 and on July 1, 2016, Plaintiff was released from the custody and supervision of the Federal Bureau of Prisons (**"BOP"**).

Authority Act, 1975 P.A. 197, being MCL § 125.1651 *et. seq.* **("DDA Act").**

19. Defendant DDA is governed by a board of directors, which consists of the following members: Hon. Mike Duggan, Mayor of the City of Detroit; Marvin Beaty, from Greektown Casino; Charles Beckham, with the City of Detroit; Austin Black, from City Living Detroit; David Blaszkiewicz, from the Detroit Investment Fund; Ehrlich Crain, from Roncelli; Sonya Delley, a Detroit resident; Melvin Hollowell, with the City of Detroit; Richard Hosey, a Detroit resident; James Jenkins, from Jenkins Construction; David Massaron, with the City of Detroit; John Naglick, with the City of Detroit; Stephen Ogden, from Rock Ventures.

20. The Defendant DDA, *inter alia*, seeks to correct and prevent deterioration in business districts; encourage historic preservation in business districts; authorize the acquisition and disposal of interests in real and personal property in business districts; authorize the creation and implementation of development plans in the in business districts; promote the economic growth of the in business districts; authorize the levy and collection of taxes; authorize the issuance of bonds and other evidences of indebtedness; and, authorize the use of tax increment revenues.

21. Defendant, Detroit Brownfield Redevelopment Authority ("**Defendant Brownfield Authority**"), is an authority organized and established under the Brownfield Redevelopment Financing Act, Mich. Comp. Laws §125.2651 *et. seq*., **("Brownfield Redevelopment Act")** and is governed by a nine-member board whose members are appointed by the Defendant Detroit City Council.

22. Defendant Brownfield Authority, *inter alia*, promotes the revitalization, redevelopment, and reuse of certain property, including, but not limited to, tax reverted, blighted, or functionally obsolete property; and it authorizes and permits the use of tax increment revenues with respect thereto.

23. Defendant Detroit City Council ("**Defendant City Council**"), is the duly elected nine-member governing and legislative body of the City of Detroit.

24. Defendant Eric Sabree ("**Defendant Wayne County Treasurer**"), is the duly elected Treasurer for the County of Wayne.

25. Defendant Christa McClellan ("**Defendant Detroit City Treasurer**"), is the the duly appointed Treasurer for the City of Detroit.

26. Defendant Mike Duggan ("**Defendant Duggan**"), is the duly elected Mayor of the City of Detroit, who serves as Chairman of the Board of Directors of the Defendant DDA.

27. Defendant Thomas Lewand ("**Defendant Lewand**"), is a an appointee of the

Defendant Duggan, who stands in and votes for and on behalf of Defendant

Duggan at meetings of the Board of Directors of the Defendant DDA when

Defendant Duggan is unable to attend.

## V.    CAUSES OF ACTION

### COUNT I
**Plaintiff Wilcoxon's Fundamental Right to Vote has been Violated
by the Defendants by their Attempt to Use Funds Generated by
the Levy of the Voter Approved Detroit Public Schools' 18-Mills
Operating Millage, for a Different Purpose, Without First
Obtaining Voters Approval.**

28. Plaintiff Wilcoxon incorporates, repeats, and realleges the foregoing

allegations as though they were fully set forth and stated herein.

29. This claim is brought pursuant to 42 U.S.C. § 1983 and the Declaratory

Judgment Act.

30. This claim seeks prospective declaratory and injunctive relief against

Defendants DDA and Brownfield Authority.

31. On November 6, 2012, Plaintiff Wilcoxon and other registered and qualified

voters of the City of Detroit voted in the general election to approve the

renewal and restoration of the 18-mills Detroit Public Schools Operating

Millage for school operating purposes only.  (**See Plaintiff Wilcoxon's**

**Affidavit attached as Exhibit B**).

32. In accordance with Mich. Comp. Laws §§ 211.24f(1) and (2)(d) of the
General Property Tax Act, the November 6, 2012 General Election ballot
proposal for the renewal and restoration of the 18-mills Detroit Public
Schools Operating Millage, fully disclosed "each local unit of government to
which the revenue from that millage will be disbursed," and stated "[a] clear
statement of the purpose for the millage." (**See Sample Ballot from
November 6, 2012 General Election containing Ballot Language for the
18-mills Detroit Public Schools Operating Millage attached as Exhibit
C**).

33. The ballot language/proposal for the 2012 millage renewal and restoration of
the 18-mills Detroit Public Schools Operating Millage stated:

> **Detroit Public School District Proposal S: Renewal and
> Restoration of School Operating Millage**
> This proposal would restore the prior authorization and allow
> the School District of the City of Detroit to continue to levy
> mills previously levied **for general operating purposes** on
> non-homestead property (mainly industrial and commercial real
> property and rental property) which expired with the 2012 tax
> levy. Owner occupied homes are exempt from the levy under
> existing law.  Shall the School District of the City of Detroit,
> County of Wayne, Michigan be authorized to levy 18.00 mills
> ($18.00 per $1,000 of taxable value) by increasing the
> limitation on the amount of taxes which may be imposed on
> taxable property in the school district which is not otherwise
> exempt, of which 17.8308 mills constitute a renewal of
> authorization which expired with the 2012 levy and 0.1692 mill
> constitutes that portion reduced by the operation of the Headlee
> amendment, for ten (10) years, the years 2013 to 2022,
> inclusive, **to provide funds for operating expenses of School**

**District**? It is estimated that 18.00 mills would raise approximately $80,900,000.00 for the School District in the first year that it is levied. YES or NO **(Emphasis supplied).**

**(See Sample Ballot from November 2012 General Election Containing Ballot Proposal attached as Exhibit C).**

34. In accordance with Mich. Comp. Laws §211.24f(2)(d) of the General Property Tax Act, the ballot proposal for the 2012 millage renewal and restoration of the 18-mills Detroit Public Schools Operating Millage clearly stated the purpose of the millage: **to provide funds for operating expenses of School District**. **(See Sample Ballot from November 2012 General Election Containing Ballot Proposal for 18-mills Detroit Public Schools Operating Millage attached as Exhibit C**).

35. Nonetheless, the Defendants are attempting to capture and use revenue generated from the levy of this millage, not for the Detroit Public Schools' operating purposes, but to finance the construction of the Little Caesars Arena and to finance the construction of the Detroit Pistons headquarters and practice facility.  Defendants are so attempting to capture and use tax revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage without first obtaining voter approval from Plaintiff Wilcoxon and the other registered and qualified electors of the City of Detroit.

36. The Defendant DDA is not seeking the approval from Plaintiff Wilcoxon or from the other registered voters of the City of Detroit to use the revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage for a different purpose.

37. In accordance with the DDA Act, the Defendant DDA currently is only seeking approval from the Detroit City Council to approve the amendment to the Defendant DDA's Catalyst Development Plan and Tax Increment Financing Plan to issue additional tax increment revenue bonds under the DDA Act, in an aggregate principal amount sufficient to enable the Defendant DDA to finance $34,5000,000 of additional improvements to Little Caesars Arena to facilitate the move of the Detroit Pistons from the Palace of Auburn Hills to the new Little Caesars Arena.

38. The Defendant DDA has indicated that the issuance of the additional tax increment revenue bonds in the amount of $34.5 million is necessary in order to accommodate the basketball, administrative, operational and facility requirements of the Detroit Pistons, in order to facilitate the relocation of the Detroit Pistons home venue for professional basketball games and related operations, from the Palace of Auburn Hills to the new Little Caesars Arena.

39. Under the DDA Act, the Defendant DDA *is* permitted to finance such improvements under a tax increment financing plan, which can capture the

tax revenue generated by the levy of the 18-mills Detroit Public Schools'
Operating Millage.

40. However, although the DDA Act so permits the Defendant DDA to capture
the tax revenues from the levy of the 18-mills Detroit Public Schools'
Operating Millage, such capture cannot occur without Plaintiff Wilcoxon
and the other registered and qualified voters of the City of Detroit, first
voting to approve such use of the tax revenue for a different purpose than
that given in the ballot proposal presented to Plaintiff Wilcoxon and the
other registered voters of the City of Detroit at the November 6, 2012
General Election.

41. Similarly, the Defendant Brownfield Authority is also seeking to capture
revenue generated from the levy of the 18-mills Detroit Public Schools'
Operating Millage.

42. As with the Defendant DDA, the Defendant Brownfield Authority, in
accordance with the Brownfield Redevelopment Financing Act, Mich.
Comp. Laws §125.2651 *et. seq.*, is also seeking to capture revenue generated
from the levy of the 18-mills Detroit Public Schools' Operating Millage,
without first obtaining approval from Plaintiff Wilcoxon and the other
registered and qualified voters of the City of Detroit.

43. In accordance with the Brownfield Redevelopment Financing Act, Mich. Comp. Laws §125.2651 *et. seq*., the Defendant Brownfield Authority is seeking to finance the construction of the Detroit Pistons' Corporate Headquarters and Practice Facility with funds captured from the levy of the 18-mills Detroit Public Schools' Operating Millage.

44. Like the Defendant DDA, as of the date of the filing of this complaint, the Defendant Brownfield Authority is also awaiting approval from the Detroit City Council to proceed with their development plans and approval to capture and use the revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage to finance the construction of the Detroit Pistons' Corporate Headquarters and Practice Facility.

45. However, the capture and use of revenues generated by the levy of the 18-mills Detroit Public Schools' Operating Millage cannot be achieved by the Defendants without first obtaining voter approval from Plaintiff Wilcoxon and the other registered qualified and registered voters of the City of Detroit.

46. Mich. Comp. Laws §211.24f(1),(2) of the General Property Tax Act states:

   Sec. 24f.

   (1) If a taxing unit submits a proposal on the question of authorizing the issuance of bonds, imposing a new millage, or increasing or renewing an existing millage, except an ad valorem special assessment millage for police or fire protection under 1951 PA 33, MCL 41.801 to 41.813, **the ballot shall**

**fully disclose each local unit of government to which the revenue from that millage will be disbursed**. As used in this subsection:

> (a) "Local unit of government" means a county, city, village, township, school district, intermediate school district, community college district, public library, or **local authority created under state law**.
>
> \* \* \* \* \* \* \* \* \* \* \* \* \*

> (2) In addition to the requirement set forth in subsection (1) and any other requirement provided by law, when submitting a proposal on the question of authorizing a millage rate to be levied under this act, the ballot shall state all of the following:

> (a) The millage rate to be authorized.
> (b) The estimated amount of revenue that will be collected in the first year that the millage is authorized and levied.
> (c) The duration of the millage in years.
> (d) **A clear statement of the purpose for the millage**.
> (e) A clear statement indicating whether the proposed millage is a renewal of a previously authorized millage or the authorization of a new additional millage. (Emphasis supplied).

47. As noted, the renewal and restoration of the 18-mills Detroit Public Schools' Operating Millage was submitted to Plaintiff Wilcoxon, and to the other registered and qualified electors of the City of Detroit, at the November 6, 2012 General Election, in accordance with Mich. Comp. Laws §211.24f of the General Property Tax Act. (**See Sample Ballot from November 6, 2012 General Election attached as Exhibit C**).

48. At the November 6, 2012 General Election, Plaintiff Wilcoxon voted yes to approve the renewal and restoration of the 18-mills Detroit Public Schools' Operating Millage.  (**See Plaintiff Wilcoxon's affidavit attached as Exhibit B**).  The 18-mills Detroit Public Schools' Operating Millage was approved by a majority of the voters in the City of Detroit who voted at the November 6, 2012 General Election.

49. Therefore, pursuant to Mich. Comp. Laws §211.24f(2)(d), the revenues generated from the 18-mills Detroit Public Schools' Operating Millage can only be used for the specific purpose identified in the ballot language, which is exclusively for school operating purposes for the Detroit Public Schools.  (**See Sample Ballot from November 6, 2012 General Election attached as Exhibit C**).

50. If the Defendants desire to capture and use any tax revenues generated from the 18-mills Detroit Public Schools' Operating Millage for a different purpose other than for school operating purposes for the Detroit Public Schools, Defendants must first obtain voter approval to use these tax funds from Plaintiff Wilcoxon and the other registered and qualified voters in the City of Detroit pursuant to Mich. Comp. Laws §211.24f of the General Property Tax Act.

51. The issue of whether voter approval is required for spending tax revenue for a different purpose than that previously approved by the electorate, was determined by the Michigan Supreme Court in *South Haven v Van Buren Co. Bd. of Comm'rs*, 478 Mich. 518; 734 NW2d 533(2007).   The Michigan Supreme Court, applying its established rules for statutory construction to Mich. Comp. Laws §211.24f of the General Property Tax Act, held:

> "Under the General Property Tax Act, MCL 211.1 *et seq.,* when a millage proposal is submitted to the electors for approval, the ballot must "fully disclose each local unit of government to which the revenue from that millage will be disbursed," and must state "[a] clear statement of the purpose for the millage." This statute does not expressly preclude using for one purpose tax revenue specifically approved for a different purpose. However, a fundamental rule of statutory construction is that the Legislature did not intend to do a useless thing.  **If funds that voters approved for the purpose stated on the ballot could be redirected to another purpose without seeking new approval, there would be no reason for including the purpose on the ballot. Indeed, voters could be lulled into voting for a millage for a popular purpose, only to have the funds then used for something they may well have never approved.  This is contrary to the General Property Tax Act… While no court has warrant to violate MCL 224.20b ordering distribution contrary to that statute, it likewise may not violate MCL 211.24f by ordering these funds to be used for a purpose not approved by the voters.**" [*South Haven v Van Buren Co. Bd. of Comm'rs*, 478 Mich at 531-533]. (Emphasis supplied).

52. No party has scheduled an election for Plaintiff Wilcoxon and the other registered and qualified electors of the City of Detroit to vote on the question of whether to approve the use of revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage for the purpose of financing the additional $34.5 million to accommodate the renovations to the Little Caesars Arena for the Detroit Pistons nor for the financing of the Detroit Pistons' Headquarters and Practice Facility.

53. The holding and conclusion reached by the Michigan Supreme Court in the *South Haven v Van Buren Co. Bd. of Comm'rs* case is buttressed by Mich. Comp. Laws §380.1216 of the Revised School Code.  Mich. Comp. Laws §380.1216 of the Revised School Code states:

> "Except as provided in the revised municipal finance act, 2001 PA 34, MCL 141.2101 to 141.2821, as provided in section 15 of the state school aid act of 1979, MCL 388.1615, or for purposes authorized under section 1211(5), **money raised by tax shall not be used for a purpose other than that for which it was raised** *without the consent of a majority of the school electors of the district voting on the question at a regular or special school election*."  (Emphasis supplied).

54. Plaintiff Wilcoxon, as a registered voter in the City of Detroit, has a fundamental constitutional right to vote on whether or not the Defendants should be permitted and allowed to capture and use revenues generated from the 18-mills Detroit Public Schools' Operating Millage, to finance the

construction of Little Caesars Arena and the Detroit Pistons' Headquarters and Practice Facility.

55. "Section 1983 provides a cause of action against any person who, acting under color state law, abridges rights created by the [United States] Constitution or laws of the United States." *Sandusky Co. Democratic Party v Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) (citing *Maine v Thiboutot*, 448 U.S. 1, 4-8, 100 S. Ct. 2502, 65 L.Ed.2d 555 (1980)).

56. "The U.S. Constitution protects an individual's right to vote during an election." *Lawson v Shelby County, TN*, 211 F.3d 331, 336 (6th Cir. 2000).

57. "Members of the public, however, have a 'strong interest in exercising the fundamental political right to vote.'" *Hunter v Hamilton County Bd of Elections*, 635 F.3d 219, 244 (6th Cir. 2011) (quoting *Purcell v Gonzalez*, 549 U.S. 1, 4, 127 S. Ct. 5, 166 L.Ed.2d 1 (2006)).

58. "That interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful." *Hunter v Hamilton County Bd of Elections*, 635 F.3d 219, 244 (6th Cir. 2011).

59. "The right to vote is a fundamental right, 'preservative of all rights.'" *League of Women Voters v Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) (quoting *Yick Wo v Hopkins*, 118 U.S. 356, 370 (1886)).

60. "The right to vote is a "precious" and "fundamental" right." *Obama for*

*America v Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (citing *Harper v Va.*

*State Bd of Elections*, 383 U.S. 663, 670, 86 S. Ct. 1079, 16 L.Ed.2d 169

(1966)).

61. "Other rights, even the most basic, are illusory if the right to vote is

undermined." *Wesberry v Sanders*, 376 U.S. 1, 17, 84 S. Ct. 526, 11

L.Ed.2d 481 (1964).

62. "Our Constitution accords special protection for the fundamental right of

voting." *Northeast Ohio Coalition for Homeless v Husted*, 696 F.3d 580,

591 (6th Cir. 2012).

63. Because "the right to exercise the franchise in a free and unimpaired manner

is preservative of other basic civil and political rights, any alleged

infringement of the right of citizens to vote must be carefully and

meticulously scrutinized." *Reynolds v Sims,* 377 U.S. 533, 562 (1964).

64. Defendants, individually and collectively, are denying Plaintiff Wilcoxon

her fundamental right to vote. They are doing so by seeking to capture and

use tax revenue generated from the levy of the 18-mills Detroit Public

Schools' Operating Millage for purposes other than that for which the

millage levy was approved.  They are doing so without first receiving

"consent of a majority of the school electors" in the City of Detroit as Mich.

Comp. Laws §380.1216 of the Revised School Code and Mich. Comp. Laws §211.24f of the General Property Tax Act so require.  (**See Plaintiff Wilcoxon's affidavit attached hereto as Exhibit B**).

65.Plaintiff Wilcoxon desires to exercise her fundamental constitutional right to vote and desires to vote not to approve the use of tax revenue generated from the 18-mills Detroit Public Schools' Operating Millage to finance the construction of Little Caesars Arena or the construction of the new Detroit Pistons' Headquarters and Practice Facility.  (**See Plaintiff Wilcoxon's affidavit attached as Exhibit B).**

66.As noted, Defendants, as of the date of the filing of this complaint, have not secured the required approval of the Detroit City Council to proceed with their respective development projects.

67.Accordingly, it is imperative that the Court take immediate action to ensure that the law is properly followed by the Defendants, and that Plaintiff Wilcoxon's fundamental constitutional right to vote is not abridged or infringed by the Defendants.

## COUNT II

**Plaintiff Davis' Fundamental Right to Vote has been Violated by the Defendant Brownfield Authority's Attempt to Use Funds Generated by the Tax Levy of the Wayne County Parks Millage for a Different Purpose Without First Obtaining Voter Approval.**

68. Plaintiff Davis incorporates, repeats, and realleges the foregoing allegations as though they were fully set forth and stated herein.

69. This claim is brought pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act.

70. This claim seeks prospective declaratory and injunctive relief against Defendant Brownfield Authority.

71. On August 2, 2016, Plaintiff Davis and other registered and qualified voters of Wayne County, voted to approve the continuation of the Wayne County Parks Millage, which tax levy was dedicated for the purpose of financing improvements to certain parks located within 43 communities in Wayne County.  (**See Plaintiff Davis' Affidavit attached as Exhibit A**).

72. In accordance with Mich. Comp. Laws §§ 211.24f(1) and (2)(d) of the General Property Tax Act, the ballot proposal for the continuation of the Wayne County Parks Millage fully disclosed "each local unit of government to which the revenue from that millage will be disbursed," and it stated "[a] clear statement of the purpose for the millage."  (**See Sample Ballot from August 2, 2016 Primary Election that Contains Ballot Language for Wayne County Parks Millage attached hereto as Exhibit D**).

73. The August 2, 2016 ballot language for the Wayne County Parks Millage Continuation stated the following:

**Proposition P- Parks Millage Continuation**
To continue the millage authorized in 2010, shall Wayne County levy this millage at the estimated 2015 rollback rate of .2459 (about 25 cents per $1,000 of taxable valuation) for five more years (2016 through 2020) to continue **to improve and operate several parks and related facilities**, including Hines Park, Elizabeth Park, Chandler Park, and improvements to municipal parks in the 43 communities as provided in an implementing ordinance through an annual allocation by commission district of the greater of $50,000 or 15% of the total funds generated from that district, on the condition that, for any year for which this continued levy would be imposed, Wayne County must budget from other sources an amount equal to its 1995-1996 fiscal year appropriation for parks?  This renewal is projected to generate $9,865,514 in 2016. YES or NO
**(Emphasis supplied. See Sample Ballot from August 2, 2016 Primary Election Containing Ballot Proposal for Wayne Co Parks Millage attached as Exhibit D).**

74. The August 2, 2016 ballot language for the continuation Wayne County Parks Millage clearly stated the purpose of the millage: to finance improvements to certain parks within Wayne County and the City of Detroit.

75. However, the Defendant Brownfield Authority is seeking to capture and use tax revenue generated from the levy of the Wayne County Parks Millage to finance the construction of the Detroit Pistons' Corporate Headquarters and Practice Facility.

76. The Defendant Brownfield Authority, in accordance with the Brownfield Redevelopment Financing Act, Mich. Comp. Laws §125.2651 *et. seq.*, is seeking to capture revenue generated from the levy of the Wayne County

Parks Millage without first obtaining voter approval from Plaintiff Davis and
other registered and qualified voters of Wayne County.

77. The capture and use of tax revenues generated by the levy of the Wayne
County Parks Millage cannot be achieved by the Defendant Brownfield
Authority without first obtaining voter approval from Plaintiff Davis and the
other registered qualified and registered voters of Wayne County.

78. Mich. Comp. Laws §211.24f(1),(2) of the General Property Tax Act states:

Sec. 24f.

(1) If a taxing unit submits a proposal on the question of
authorizing the issuance of bonds, imposing a new millage, or
increasing or renewing an existing millage, except an ad
valorem special assessment millage for police or fire protection
under 1951 PA 33, MCL 41.801 to 41.813, the ballot shall fully
disclose **each local unit of government to which the revenue
from that millage will be disbursed**. As used in this
subsection:

(a) "Local unit of government" means a county, city,
village, township, school district, intermediate school
district, community college district, public library, **or
local authority created under state law**.
＊＊＊＊＊＊＊＊＊＊＊＊＊＊
 (2) ***In addition to the requirement set forth in subsection (1)
and any other requirement provided by law*, when submitting
a proposal on the question of authorizing a millage rate to
be levied under this act, the *ballot shall state all of the
following*:**
(a) The millage rate to be authorized.

(b) The estimated amount of revenue that will be collected in the first year that the millage is authorized and levied.
(c) The duration of the millage in years.
**(d) A clear statement of the purpose for the millage.**
(e) A clear statement indicating whether the proposed millage is a renewal of a previously authorized millage or the authorization of a new additional millage. (Emphasis supplied).

79. The continuation of the Wayne County Parks Millage was submitted to Plaintiff Davis and to the other registered and qualified electors of Wayne County at the August 2, 2016 Primary Election in accordance with Mich. Comp. Laws §211.24f of the General Property Tax Act. (**See Sample Ballot from August 2, 2016 Primary Election attached as Exhibit D**).

80. At the August 2, 2016 Primary Election, Plaintiff Davis voted yes to approve the continuation of the Wayne County Parks Millage. (**See Plaintiff Davis' affidavit attached as Exhibit A).** The Wayne County Parks Millage was approved by a majority of Wayne County registered voters that voted in the August 2, 2016 Primary Election.

81. Pursuant to Mich. Comp. Laws §211.24f(2)(d), the tax revenues generated by the levy of the Wayne County Parks Millage can only be used for the specific purpose identified in the ballot language, which was exclusively for improvements of parks located in 43 communities within Wayne County and the City of Detroit.

82. The Defendant Brownfield Authority desires to capture and use tax revenue generated by the levy of the Wayne County Parks Millage for the purpose of financing the construction of Detroit Pistons' Corporate Headquarters and Practice Facility.

83. However, the Defendant Brownfield Authority must first obtain approval by a vote of Plaintiff Davis and the other registered and qualified voters of Wayne County pursuant to Mich. Comp. Laws §211.24f of the General Property Tax Act.

84. The issue of whether voter approval is required for spending tax revenue for a different purpose than that previously approved by the electorate, was determined by the Michigan Supreme Court *South Haven v Van Buren Co. Bd. of Comm'rs*, 478 Mich. 518; 734 NW2d 533(2007).   The Michigan Supreme Court, applying its established rules for statutory construction to Mich. Comp. Laws §211.24f of the General Property Tax Act, held:

> "Under the General Property Tax Act, MCL 211.1 *et seq.,* when a millage proposal is submitted to the electors for approval, the ballot must "fully disclose each local unit of government to which the revenue from that millage will be disbursed," and must state "[a] clear statement of the purpose for the millage." This statute does not expressly preclude using for one purpose tax revenue specifically approved for a different purpose. However, a fundamental rule of statutory construction is that the Legislature did not intend to do a useless thing.  **If funds that voters approved for the purpose stated on the ballot**

**could be redirected to another purpose without seeking new approval, there would be no reason for including the purpose on the ballot. Indeed, voters could be lulled into voting for a millage for a popular purpose, only to have the funds then used for something they may well have never approved.  This is contrary to the General Property Tax Act… While no court has warrant to violate MCL 224.20b ordering distribution contrary to that statute, it likewise may not violate MCL 211.24f by ordering these funds to be used for a purpose not approved by the voters.**" [*South Haven v Van Buren Co. Bd. of Comm'rs*, 478 Mich at 531-533]. (Emphasis supplied).

85. No party has scheduled an election for Plaintiff Davis and the other registered and qualified electors of Wayne County to vote whether or not to approve the use of the tax funds revenue from the Wayne County Parks Millage levy for the purpose of financing the Detroit Pistons' Corporate Headquarters and Practice Facility.

86. Plaintiff Davis, as a registered voter of the City of Highland Park, which is located within Wayne County, has a fundamental right to vote on the question of whether or not the Defendant Brownfield Authority should be permitted and allowed to capture and use the tax revenue generated by the levy of the Wayne County Parks Millage to finance the construction of the new Detroit Pistons' Corporate Headquarters and Practice Facility.

87. "Section 1983 provides a cause of action against any person who, acting under color state law, abridges rights created by the [United States]

Constitution or laws of the United States." *Sandusky Co. Democratic Party v Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) (citing *Maine v Thiboutot*, 448 U.S. 1, 4-8, 100 S. Ct. 2502, 65 L.Ed.2d 555 (1980)).

88. "The U.S. Constitution protects an individual's right to vote during an election." *Lawson v Shelby County, TN*, 211 F.3d 331, 336 (6th Cir. 2000).

89. "Members of the public, however, have a 'strong interest in exercising the fundamental political right to vote.'" *Hunter v Hamilton County Bd of Elections*, 635 F.3d 219, 244 (6th Cir. 2011) (quoting *Purcell v Gonzalez*, 549 U.S. 1, 4, 127 S. Ct. 5, 166 L.Ed.2d 1 (2006)).

90. "That interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful." *Hunter v Hamilton County Bd of Elections*, 635 F.3d 219, 244 (6th Cir. 2011).

91. "The right to vote is a fundamental right, 'preservative of all rights.'" *League of Women Voters v Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) (quoting *Yick Wo v Hopkins*, 118 U.S. 356, 370 (1886)).

92. "The right to vote is a "precious" and "fundamental" right." *Obama for America v Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (citing *Harper v Va. State Bd of Elections*, 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966)).

93. "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

94. "Our Constitution accords special protection for the fundamental right of voting." *Northeast Ohio Coalition for Homeless v Husted*, 696 F.3d 580, 591 (6th Cir. 2012).

95. Because "the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v Sims,* 377 U.S. 533, 562 (1964).

96. Defendant Brownfield Authority is denying Plaintiff Davis his fundamental right to vote by its unlawful attempt to capture and use tax revenue generated from the levy of the Wayne County Parks Millage for purposes other than that for which the millage was approved by voters, without the Defendant Brownfield Authority first receiving approval from Plaintiff Davis and the other registered electors of Wayne County as Mich. Comp. Laws §211.24f of the General Property Tax Act requires.  (**See Plaintiff Davis' affidavit attached hereto as Exhibit A**).

97. Plaintiff Davis desires to exercise his fundamental constitutional right to vote and to vote not to so approve the use of tax revenue generated from the

Wayne County Parks Millage levy to finance the construction of the new

Detroit Pistons' Corporate Headquarters and Practice Facility.  (**See**

**Plaintiff Davis' affidavit attached as Exhibit A).**

98. Defendant Brownfield Authority, as of the date of the filing of this

complaint, has not secured the required approval of the Detroit City Council

to authorize the capture and spending of tax revenue from the levy of the

Wayne County Parks Millage.

99. It is therefore imperative that the Court take immediate action to ensure that

the law is properly followed by the Defendant Brownfield Authority, so that

Plaintiff Davis' fundamental constitutional right to vote is not abridged or

infringed by the Defendant Brownfield Authority's unlawful actions.

## COUNT III

**Defendants DDA, Detroit Brownfield Authority, and Detroit City Council Are Violating Plaintiff Wilcoxon's Substantive Due Process Rights By Unlawfully Using Revenue Generated From The Tax Levy of the 18-Mills Detroit Public Schools' Operating Millage For An Impermissible Purpose Without First Obtaining A Majority Vote From The Electors of The City of Detroit Authorizing The Use of Sinking Funds For Said Purpose.**

100.     Plaintiff Wilcoxon incorporates, repeats, and realleges the foregoing

allegations as though they were fully set forth and stated herein.

101.     Plaintiff Wilcoxon's claim is brought pursuant to 42 U.S.C. § 1983

and the Declaratory Judgment Act.

102.    Plaintiff Wilcoxon's claim seeks prospective declaratory relief against

Defendants DDA, Detroit Brownfield Authority, and Detroit City Council.

103.    Mich. Comp. Laws § 380.1216  of the Revised School Code states:

"Except as provided in the revised municipal finance act, 2001 PA 34,
MCL 141.2101 to 141.2821, as provided in section 15 of the state
school aid act of 1979, MCL 388.1615, or for purposes authorized
under section 1211(5), **money raised by tax** *shall not be used for a*
*purpose other than that for which it was raised without the consent*
*of a majority of the school electors of the district voting on the*
*question* **at a regular or special school election**." (Emphasis
supplied).

104.    "The Fourteenth Amendment prohibits state actors from depriving an

individual of life, liberty, or property without due process of law." *Bailey v*

*Floyd County Bd. of Educ.,* 106 F.3d 135, 140-41 (6th Cir. 1997).

105.    "The Due Process Clause has a procedural component and a

substantive one.  The two components are distinct from each other because

each has different objectives, and each imposes different constitutional

limitations on government power." *Howard v Grinage*, 82 F.3d 1343, 1349

(6th Cir. 1996).

106.    "Substantive due process,… serves the goal of preventing

governmental power from being used for purposes of oppression, regardless

of the fairness of the procedures used." *Howard v Grinage*, 82 F.3d 1343,

1349 (6th Cir. 1996) (internal citations and quotation marks omitted).

107.     "Substantive due process serves as a vehicle to limit various aspects

of potentially oppressive government action  For example, it can serve as a

check on legislative enactments thought to infringe on fundamental rights

otherwise not explicitly protected by the Bill of Rights; or as a check on

official misconduct which infringes on a "fundamental right;" r as a

limitation on official misconduct, which although not infringing on a

fundamental right, is so literally "conscience shocking" hence oppressive, as

to rise to the level of a substantive due process violation." *Howard v*

*Grinage,* 82 F.3d 1343, 1349 (6th Cir. 1996).

108.     "Where state action infringes upon a fundamental right, such action

will be upheld under the substantive due process component of the

Fourteenth Amendment only where the governmental action furthers a

compelling state interest, and is narrowly drawn to further that state

interest." *Kallstrom v City of Columbus,* 136 F.3d 1055, 1064 (6th Cir.

1998).

109.     "[W]here a fundamental liberty interest protected by the substantive

due process component of the Fourteenth Amendment is involved, the

government cannot infringe on that right 'unless the infringement is

narrowly tailored to serve a compelling state interest.'" *Johnson v City of*

*Cincinnati*, 310 F.3d 484, 502 (6th Cir. 2002) (quoting *Washington v Glucksberg*, 521 U.S. 702, 721 (1997)).

110.     "To state a claim of substantive due process, Plaintiff must allege and show that Defendants deprived him with a "fundamental" right or liberty interest that is accorded special constitutional protection." *Yohn v Coleman*, 639 F.Supp.2d 776, 788 (E.D.Mich. 2009) (citing *Washington v Glucksberg*, 521 U.S. 702, 719-720, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997)).

111.     On April 19, 2017, the Defendant DDA Board of Directors voted to approve a resolution authorizing the amendments to the Catalyst Project and the Tax Increment Financing Plans to be submitted to the Defendant City Council for approval in accordance with Mich. Comp. Laws §§ 125.1668 and 125.1669 of the DDA Act.

112.     On June 6, 2017, pursuant to the Brownfield Redevelopment Financing Act, Defendant City Council approved the development plan for the Defendant Brownfield Authority to proceed with its development plan to construct the Detroit Pistons Corporate Headquarters and Practice Facility.

113.     On June 20, 2017, the Defendant City Council is scheduled to vote on whether to approve the amendments made to the Defendant DDA's Catalyst and Tax Increment Financing Plans, which will enable the Defendant DDA to issue an additional $34.5 million in tax increment financing bonds to

repay developers for costs they advanced to pay for the additional improvements made to the Little Caesars Arena to facilitate the move of the Detroit Pistons to play NBA basketball games at the new Little Caesars Arena.

114.    Because the Defendants DDA and Brownfield Authority, individually and collectively, intend to use revenue generated from the tax levy of the 18-mills Detroit Public Schools' Operating Millage to pay for costs that were associated with the additional improvements that were needed to facilitate the move of the Detroit Pistons to the new Little Caesars Arena, as well as construction costs for the Detroit Pistons Corporate Headquarters and Practice Facility, pursuant to Mich. Comp. Laws § 380.1216, the Defendants DDA and Brownfield Authority must first receive "consent of a majority of the school electors", including Plaintiff Wilcoxon, of the City of Detroit.

115.    As noted, Plaintiff Wilcoxon, as a duly registered and qualified elector of the City of Detroit, desires to exercise her fundamental constitutional right to vote to vote against using any funds and/or revenue generated from the tax levy of the 18-mills Detroit Public Schools' Operating Millage to pay for the costs of associated financing construction costs for the new Little Caesars Arena and the Detroit Pistons Corporate Headquarters and Practice Facility.  However, to date, this fundamental right has been denied Plaintiff

Wilcoxon and other registered and qualified electors of the City of Detroit by the Defendants.  (**See Plaintiff Wilcoxon's affidavit attached hereto**).

116.     It is well-settled in the Sixth Circuit that "[t]he right to vote is a "precious" and "fundamental" right." *Obama for America v Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (citing *Harper v Va. State Bd. of Elections*, 383 U.S.663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966)).

117.     Since Defendants' unlawful actions to expend revenue generated from the tax levy of the 18-mills Detroit Public Schools' Operating Millage for an impermissible infringe upon Plaintiff Wilcoxon's fundamental right to vote, their actions can be "upheld only when they are narrowly tailored to a compelling government interest." *Seal v Morgan*, 229 F.3d 567, 574 (6th Cir. 2000).

118.     In light of the fact that Plaintiff Wilcoxon, as a registered and qualified elector of the City of Detroit, has a statutory right under Mich. Comp. Laws § 380.1216 of the Revised School Code to vote on the question of whether to allow revenue generated from the tax levy of the 18-mills Detroit Public Schools' Operating Millage to cover costs associated with the construction of the new Little Caesars Arena and the Detroit Pistons Corporate Headquarters, the Defendants DDA and Brownfield Authority cannot satisfy this high burden.

## COUNT IV

### Defendants DDA and Brownfield Authority Shall Be Preliminarily and Permanently Enjoined from Capturing and Using Revenues Generated from the Special Millage levies in Violation of Mich. Comp. Laws §§211.24f, 380.1216.

119.    Plaintiffs Wilcoxon and Davis incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

120.    This claim is brought pursuant to 42 U.S.C. § 1983, and the Federal Declaratory Judgment Act.

121.    This clam seeks prospective injunctive relief against Defendants DDA and Brownfield Authority.

122.    Acting under color of law and pursuant to their customs, policies and practices, the Defendants DDA and Brownfield Authority are engaging in conduct that violates Plaintiffs Wilcoxon's and Davis' fundamental constitutional right to vote.  (**See Plaintiffs' affidavits attached hereto as Exhibits A-B**).

123.    Plaintiffs Davis and Wilcoxon independently seek to enjoin, preliminarily and permanently, Defendants DDA and Brownfield Authority, from using any tax revenue generated from any special millages, without first obtaining approval from the registered electors of the City of Detroit

and/or Wayne County as required by Mich. Comp. Laws §§211.24f and 380.1216.

124.    Plaintiffs Davis and Wilcoxon will suffer irreparable harm to their constitutional right to vote if Defendants are permitted to capture and use revenues generated from the 18-mills School Operating Millage for the Detroit Public Schools and the Wayne County Park Millage for different purposes, without first allowing Plaintiffs and the other registered and qualified electors to vote on the question on whether or not to permit said tax revenue generated from the levy of said millages to be used to finance the construction of Little Caesars Arena and the construction of the new Detroit Pistons' Corporate Headquarters and Practice Facility.

## COUNT V

**Defendant DDA Violated Plaintiff Robert Davis' Procedural Due Process Rights by Failing to Provide Plaintiff Robert Davis with copies of Amended Tax Increment Financing Plan in accordance with Mich. Const. 1963, art. 9, § 23.**

125.    Plaintiff Davis incorporates, repeats, and realleges the foregoing allegations as though they were fully set forth and stated herein.

126.    Plaintiff Davis' claim is brought pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act.

127.    Plaintiff Davis' claim seeks prospective declaratory relief against Defendant DDA.

128.     On May 28, 2017, Plaintiff Davis sent, via electronic mail, a request

to the Defendant DDA requesting a copy of the Defendant DDA's Amended

Tax Increment Financing Plan in accordance with the Michigan Constitution

of 1963, Art. 9, § 23.  (**See Plaintiff Davis' May 28, 2017 Email to**

**Defendant DDA attached hereto as Exhibit E**).

129.     On June 5, 2017, through its in-house counsel, Ms. Melinda Jensen,

the Defendant DDA issued a response to Plaintiff Davis' May 28, 2017

written request, and informed Plaintiff Davis that his request was being

denied under Michigan's Freedom of Information Act ("**FOIA**"), citing the

pending litigation exemption provision.  (**See Defendant DDA's June 5,**

**2017 written response to Plaintiff Davis attached hereto as Exhibit F**).

130.     Michigan Constitution of 1963, article 9, § 23, provides in relevant

part:

> "*All* **financial records**, accountings, **audit reports** *and other reports*
> *of public moneys shall* **be public records and open to inspection**."
> (Emphasis supplied).

131.     The Defendant DDA's Amended Tax Increment Financing Plan is a

financial record and report of public money that is subject to disclosure

under Mich. Const. 1963, art. 9, §23.

132.     Defendant DDA's failure to provide Plaintiff Davis with a copy of the

Defendant DDA's Amended Tax Increment Financing Plan in accordance

with Mich. Const. 1963, art. 9, §23 violates Plaintiff Davis' procedural due process rights as applied to the states under the Fourteenth Amendment of the United States Constitution.

133.    "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process." *Bazetta v McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

134.    "Those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v Austin*, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005).

135.    "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights ***prior to*** depriving him of the property interest." *Waeschle v Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009) (internal quotation marks omitted) (Emphasis supplied).

136.    "Property interests, of course, are not created by the [United States] Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that

support claims of entitlement to those benefits." *Bd. of Regents v Roth*, 408
U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

137.     "To have a property interest in a benefit, a person clearly must have
more than an abstract need or desire for it.  He must have more than a
unilateral expectation of it.  He must, instead, have a legitimate claim of
entitlement to it." *Bd of Regents v Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701,
33 L.Ed.2d 548 (1972).

138.     "State statutes or rules create protected property interests by entitling
a citizen to certain benefits." *Daniels v Woodside*, 396 F.3d 730, 736 (6th
Cir. 2004).

139.     Moreover, a state constitution can create a protected property interest.
See *Daniels v Woodside*, 396 F.3d 730, 736 (6th Cir. 2004).

140.     "Although property rights are principally created by state law,
whether a substantive interest created by the state rises to the level of a
constitutionally protected property interest is a question of federal
constitutional law... The due process clause only protects those interests to
which one has a legitimate claim of entitlement." *Waeschle v Dragovic*, 576
F.3d 539, 544-545 (6th Cir. 2009).

141.     Pursuant to the clear and unambiguous language of Mich. Const.
1963, art. 9, § 23, Plaintiff Davis has a protected property interest and is

"entitled" to receive a copy of the Defendant DDA's Tax Increment Financing Plan pursuant to Mich. Const. 1963, art. 9, §23.

142.     Defendant DDA's failure to comply with Mich. Const. 1963, art. 9, §23 constitutes a violation of Plaintiff Davis' procedural due process rights under the Fourteenth Amendment.

## COUNT VI

### Plaintiffs Shall Be Awarded Court Costs and Attorney Fees Under 42 U.S.C. § 1988.

143.     Plaintiffs Davis and Wilcoxon incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

144.     This claim is brought pursuant to 42 U.S.C. §1988.

145.     Plaintiffs Davis and Wilcoxon shall be awarded their attorney's fees and costs pursuant to 42 U.S.C. § 1988 for any relief granted for any of the counts properly pled and alleged herein against all of the named Defendants. See *Déjà vu of Nashville Inc. v Metro Gov't of Nashville and Davison County*, 421 F.3d 417 (6th Cir. 2005; and see also, *Berger v City of Mayfield Heights*, 265 F.3d 399, 406-407 (6th Cir. 2001).

## COUNT VII

### State-Law Claim - Declaratory Judgment Declaring Defendants Detroit City Council and DDA Failed To Give Proper Notice of Public Hearing in accordance with Mich. Comp. Laws §§ 125.1668 and 125.1669 of the DDA Act, and thus Defendant Detroit City Council Does Not Have Legal Authority

**To Proceed To Approve Amendments To Defendant DDA's Catalyst and Tax Increment Plans.**

146.     Plaintiff Davis incorporates, repeats, and realleges the foregoing allegations as though they were fully set forth and stated herein.

147.     Plaintiff Davis' claim is brought pursuant to the Declaratory Judgment Act.  Plaintiff Davis respectfully requests the Court to exercise its supplemental jurisdiction in accordance with 28 U.S.C. § 1367 over this state-law claim.

148.     Plaintiff Davis' claim seeks prospective declaratory relief against Defendants Detroit City Council and DDA.

149.     On April 19, 2017, pursuant to Mich. Comp. Laws §§ 125.1668 and 125.1669 of the DDA Act, Defendant DDA approved a resolution authorizing the submission of the Defendant DDA's Amended Catalyst and Tax Increment Plans to the Defendant Detroit City Council for their approval.

150.     On May 25, 2017, pursuant to Mich. Comp. Laws §§ 125.1668 and 125.1669 of the DDA Act, the Defendant Detroit City Council purportedly held a public hearing on the proposed amendments to the Defendant DDA's Catalyst and Tax Increment Financing Plans, which Plaintiff Davis attended.

151.    Pursuant to Mich. Comp. Laws § 125.1669(2) of the DDA Act,

"[a]mendments to an approved development plan or tax increment plan must

be submitted by the authority[2] to the governing body[3] for approval or

rejection."

152.    Mich. Comp. Laws §125.1669(1) of the DDA Act further provides,

"[*t]he governing body after* a public hearing on the development plan *or the

tax increment financing plan, or both, with notice of the hearing given in

accordance with section 18*, shall determine whether the development plan

or tax increment financing plan constitutes a public purpose." (Emphasis

supplied).

153.    Section 18 of the DDA Act, Mich. Comp. Laws 125.1668(1), states:

"(1) The governing body, before adoption of an ordinance approving
or amending a development plan or approving or amending a tax
increment financing plan, shall hold a public hearing on the
development plan. Notice of the time and place of the hearing shall be
given by publication twice in a newspaper of general circulation
designated by the municipality, the first of which shall be not less than
20 days before the date set for the hearing. Notice of the hearing shall
be posted in at least 20 conspicuous and public places in the
downtown district not less than 20 days before the hearing. Notice

---

[2] Mich. Comp. Laws § 125.1651(c) of the DDA Act defines the term "authority" to mean "a
downtown development authority created pursuant to this act."  In the case at bar, the Defendant
DDA is the "authority" for purposes of the DDA Act.

[3] Mich. Comp. Laws § 125.1651(q) of the DDA Act defines the term "governing body of a
municipality" to mean "the elected body of a municipality having legislative powers."  In the
case at bar, the Defendant Detroit City Council is the "governing body" for purposes of the DDA
Act.

shall also be mailed to all property taxpayers of record in the downtown district not less than 20 days before the hearing. **Beginning June 1, 2005, the notice of hearing** *within the time frame described in this subsection shall be mailed by certified mail to* <u>the governing body of each taxing jurisdiction</u> **levying taxes that would be subject to capture if the development plan or the tax increment financing plan is approved or amended**." (Emphasis supplied).

154.    On May 24, 2017, Plaintiff Davis, in accordance with Michigan's FOIA, requested Defendant DDA to provide copies of the certified mail receipts and signed return receipts from the certified mail the Defendant DDA purportedly sent to the "governing body of each tax jurisdiction levying taxes that would be subject to capture if the development plan or the tax increment financing plan is approved or amended." (**See Plaintiff Davis' May 24, 2017 request attached as Exhibit G**).

155.    On June 1, 2017, the Defendant DDA provided Plaintiff Davis with a copy of the certified mail receipts and signed return receipts from the certified mail the Defendant DDA purportedly sent to the "governing body of each tax jurisdiction levying taxes that would be subject to capture if the development plan or the tax increment financing plan is approved or amended." (**See Certified Mail Receipts attached as Exhibit H**).

156.    A review of the certified mail receipts, as well as the notices purportedly sent by the Defendant DDA to the representatives from the

various taxing jurisdictions, clearly reflect that the notices were not sent to the "governing bodies of the taxing jurisdictions."

157.    Mich. Comp. Laws § 125.1668(1) of the DDA Act clearly required notices be sent to the "governing body" of the taxing jurisdictions.

158.    Defendants City Council and DDA did not send notices to the "governing bodies."  Rather, Defendant DDA, purportedly on behalf of the Defendant City Council, sent notices via certified mail to individuals who were not members or representatives of the "governing body" of the taxing jurisdictions.

159.    As a result of the Defendants City Council and DDA failing to properly send out notices to the "governing bodies" of the taxing jurisdictions, pursuant to Mich. Comp. Laws § 125.1669 of the DDA Act, the Defendant City Council cannot proceed with approving the Defendant DDA's Amended Catalyst and Tax Increment Financing Plans.

160.    On June 5, 2017, Plaintiff Davis sent the Defendant City Council and their legal representatives an email informing them of their failure to provide proper notice in accordance with Mich. Comp. Laws §§ 125.1668 and 125.1669, and the Defendant City Council has chosen to ignore and disregard Plaintiff Davis' written communication.

161.     Thus, it is necessary for the Court to issue a declaratory judgment declaring that the Defendant City Council did not provide proper notice to the "governing bodies" of the taxing jurisdictions that are subject to the tax capture under the DDA Act, and consequently, the Defendant City Council is now unable to proceed with approving the Defendant DDA's amendments to the Catalyst and Tax Increment Financing Plans.

**COUNT VIII**

**State-Law Claim- Writ of Mandamus Compelling the Defendants to Refund Tax Revenue Generated from the Levy of Detroit Library Millage, Detroit Public Schools' Operating Millage, Wayne County Community College District Millage and Wayne County Parks Millage to the Tax Payers.**

162.     Plaintiffs Davis and Wilcoxon incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

163.     Plaintiffs Davis' and Wilcoxon's respectfully request the Court to exercise its supplemental jurisdiction in accordance with 28 U.S.C. § 1367 over this state-law claim.

164.     Plaintiff Davis' and Wilcoxon's claim seek writ of mandamus against Defendants DDA, Brownfield Authority, Wayne County Treasurer, and the Detroit City Treasurer pursuant to the Michigan Supreme Court's holding in *South Haven v Van Buren Co Bd of Comm'rs*, 478 Mich. 518; 734 NW2d 533 (2007), and Mich. Comp. Laws § 211.24f of the General Property Tax

Act, compelling them  to refund collected taxes to the taxpayers that have been diverted and used to finance the construction of the new Little Caesars Arena and the new Detroit Pistons' Corporate Headquarters and Practice Facility from 2014 to the present.

165.    Plaintiffs Wilcoxon and Davis, individually and collectively, allege that the Defendants DDA and Brownfield Authority are unlawfully using revenue generated from the tax levies of special millages, including but not limited to the 18-mills Detroit Public Schools' Operating Millage, Wayne County Parks Millage and the Detroit Library Millage, for a different purpose other than that for which the voters approved the special millages.

166.    Under Michigan Law, "funds derived from levies must be used ofor the purpose stated in the ballot and that using such funds for another purpose would violate the law." *Debano-Griffin v Lake County*, 486 Mich. 938 at 938; 782 NW2d 502 (2010) (quoting *City of South Haven v Van Buren Co Bd of Comm'rs*, 478 Mich. 518, 533 n 23, 534 (2007)).

167.    Specifically, Plaintiffs Wilcoxon and Davis, individually and collectively, seek the issuance of a writ of mandamus compelling the Defendants to refund collected taxes to the taxpayers that were generated from the levy of the following millages:

    a.  18-mills Detroit Public Schools' Operating Millage

    b.  Wayne County Parks Millage

    c.  Detroit Library Millage

    d.  Wayne County Community College Operating Millage

    e.  Wayne County Jail Millage

168.    As a property owner and taxpayer of the City of Detroit, County of Wayne, Plaintiff Wilcoxon has personally paid most, if not all, of the foregoing millages.

169.    Plaintiff Wilcoxon does not approve the use of tax revenue generated from the levy of the forgoing millages to be used for any other purpose other than for that which the majority voters of the City of Detroit and County of Wayne approved the millage for.

170.    Plaintiff Wilcoxon, a duly registered voter of the City of Detroit, County of Wayne,  and Plaintiff Davis as a duly registered voter of the City of Highland Park, County of Wayne, each individually desire to exercise her fundamental constitutional right to vote on the question of whether revenue generated from the levy of the aforementioned millages should be diverted and used to finance the construction of the new Little Caesars Arena and the Detroit Pistons' Corporate Headquarters and Practice Facility.

## COUNT IX

**Civil RICO Claim Against Defendants DDA, Duggan, and Lewand, pursuant to 18 U.S.C. §§ 1962(c) and 1964.**

171.     Plaintiffs Davis and Wilcoxon incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

172.     Plaintiffs Davis and Wilcoxon, individually and collectively, have standing to bring their Civil RICO claim against Defendants DDA, Duggan and Lewand pursuant to 18 U.S.C. § 1964(c).

173.     This Court has jurisdiction over Plaintiffs Davis and Wilcoxon's Civil RICO claim pursuant to 18 U.S.C. §§ 1964(a) and 1965(a).

174.     Through a deliberate scheme to defraud Plaintiff Wilcoxon and other taxpayers of the City of Detroit, County of Wayne out of their tax dollars, and as well as to deny Plaintiffs Wilcoxon and Davis and other registered voters of their fundamental right to vote, Defendants DDA, Duggan and Lewand directly and/or indirectly engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

175.     Specifically, Defendant DDA, through its Chairmen Duggan and Lewand, unlawfully used tax revenue generated from the levy of special millages, including but not limited to revenue generated from the 18-mills Detroit Public Schools' Operating Millage, Wayne County Parks Millage and Detroit Public Library Millage, to finance the construction costs of the new Little Caesars Arena without first obtaining approval from the electorate.

176.     Under Michigan Law, "funds derived from levies must be used for the purpose stated in the ballot, and that using such funds for another purpose would violate the law." *Debano-Griffin v Lake County*, 486 Mich. 938 at 938; 782 NW2d 502 (2010) (quoting *City of South Haven v Van Buren Co Bd of Comm'rs*, 478 Mich. 518, 533 n 23, 534 (2007)).

177.     Defendants DDA, Duggan and Lewand could be charged and convicted of multiple related violations of law, which form a pattern and practice and which violations are each potentially punishable by more than one year in jail.

## Predicate Criminal Acts of Conspiracy To Defraud United States

178.     18 U.S.C. § 371 provides:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

179.     Defendants Duggan and Lewand, in their official capacities as the Chairmen of the Board of Directors of the Defendant DDA, acted in criminal violation of 18 U.S.C. 371.

180.     Defendants Duggan and Lewand, in their official capacities as Chairmen of the Board of Directors of the Defendant DDA, devised or

intended to devise, a scheme or artifice meant to defraud and/or obtain money or property, from the unlawful capture and use of tax revenue from the levy of special millages, in order to pay for the construction costs associated with the new Little Caesars Arena.

181.    Specifically, on January 11, 2017, the Board of Directors of the Defendant DDA unanimously voted to approve a Resolution Declaring Bond Reimbursement Intent.  (**See January 11, 2017 Resolution attached**).

182.    Defendant Lewand, acting as the Defendant Duggan's chosen representative, voted, on behalf of the Defendant Duggan, to approve the Resolution Declaring Bond Reimbursement Intent.  (**See January 11, 2017 Resolution attached**).

183.    Resolution Declaring Bond Reimbursement Intent as approved on January 11, 2017 by Defendant Lewand and the other members of the Board of Directors of the Defendant DDA states in pertinent part the following:

> "WHEREAS, the Authority expects to pay certain expenses of the Additional Catalyst Development Project Improvements prior to the issuance of the Additional Tax Increment Revenue Bonds, **and to _reimburse itself_ for such expenditures from the tax proceeds of the Additional Tax Increment Revenue Bonds.**
> "NOW, THEREFORE, BE IT RESOLVED, by the Board of Directors of the Authority as follows:
>> 1. **Reimbursement**. The authority makes the following declarations of complying with the reimbursement rules

of Treas. Reg. §1.150-2 pursuant to the Internal Revenue Code of 1986, as amended:

(a) **The Authority reasonably expects to *reimburse itself* for certain expenditures for the costs** of the Additional Catalyst Development Project Improvements with proceeds of the Additional Tax Increment Revenue Bonds." (Emphasis supplied).

184.    The January 11, 2017 Resolution Declaring Bond Reimbursement Intent, as approved by Defendant Lewand and the other members of the Board of Directors of the Defendant DDA, seeks to defraud the U.S. Department of Treasury and the Internal Revenue Service ("**IRS**") because: the Defendant DDA has not advanced *any* of the costs associated with the Additional Catalyst Development Project Improvements.

185.    All costs associated with the Additional Catalyst Development Project Improvements have been paid, or "fronted," by either Olympia Entertainment and/or Palace Sports and Entertainment. None have been paid by the DDA.

186.    At the June 6, 2017 Emergency Hearing held in this matter, counsel for Defendants DDA and Brownfield Authority, in fact stated to the Court that the costs associated with the Additional Catalyst Development Project Improvements, indeed had been in fact "fronted" by the private developers, and that the tax revenue from the levy of the special millages were needed, to reimburse, the private developers, Olympia Entertainment and Palace

Sports and Entertainment The millages were not needed to reimburse the Defendant DDA, as the January 11, 2017 Resolution falsely states and asserts.

187.    In order for the Defendant DDA to qualify for the reimbursement in accordance with Treas. Reg. §1.150-2 and the Internal Revenue Code of 1986, as amended, the Defendant DDA would have had to advance these costs.  However, they have not advanced *any* of the costs.

188.    The January 11, 2017 Resolution, as approved by Defendant Lewand, at the request and on behalf of Defendant Duggan, was an attempt of the Defendants Duggan and Lewand to defraud the U.S. Department of Treasury and the IRS. Plaintiffs believe that it was so done in such manner because Defendants knew the Defendant DDA would not otherwise qualify for reimbursement from such expansion of the Development Area and Construction Costs associated therewith for the financing of the Little Caesars Arena or, as described in the 2017 Detroit Pistons Performance Facility and Headquarters Community Benefits Agreement Report and the proposed Memorandum of Understanding contained therein, for the Detroit Pistons Corporate Headquarters and Practice Facility, if, in fact, the Defendant DDA *was not* advancing the costs and sought to reimburse itself.

189.     Defendant Lewand, as noted in the January 11, 2017 Resolution, was acting in place and instead of, and on behalf of, Defendant Duggan.

190.     Upon information and belief, Plaintiffs Davis and Wilcoxon believe that Defendant Lewand voted as Defendant Duggan wanted or requested that he vote on such Resolution.

191.     It is noteworthy that the January 11, 2017 Resolution does not mention that the proceeds from the Additional Tax Increment Revenue Bonds, were in fact going to be used to reimburse the private developers, Olympia Entertainment and Palace Sports and Entertainment, and not the Defendant DDA. Such omission was deliberate and intended to deceive.

192.     Defendants Duggan and Lewand so utilized such false or fraudulent pretenses, presentations, omissions and/or promises in order to persuade the other members of the Board of Directors of the Defendant DDA to so approve the January 11, 2017 Resolution, which thus falsely asserts that the Defendant DDA was seeking to reimburse "itself" for funds it was going to advance funds to finance the Additional Catalyst Development Project Improvements, prior to the issuance of the Additional Tax Increment Revenue Bonds.

193.     Defendants DDA'S, Duggan's and Lewand's actions violated 18 U.S.C. § 371.

## Predicate Criminal Acts of Federal Wire Fraud Statute, 18 U.S.C. § 1343

194.     The acts of Defendants Duggan, Lewand, and the DDA, could be a

basis upon which to charge and convict multiple related violations of the

law, and which form a pattern and practice of violations that are each

punishable by more than one year in prison and can constitute wire fraud.

195.     Defendants Duggan, Lewand and the DDA actions could be deemed a

criminal violation of the federal wire fraud statute under 18 U.S.C. § 1343.

196.     18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice
> to defraud, or for obtaining money or property by means of false or
> fraudulent pretenses, representations, or promises, transmits or causes
> to be transmitted by means of wire, radio, or television
> communication in interstate or foreign commerce, any writings, signs,
> signals, pictures, or sounds for the purpose of executing such scheme
> or artifice, shall be fined under this title or imprisoned not more than
> 20 years, or both. If the violation occurs in relation to, or involving
> any benefit authorized, transported, transmitted, transferred,
> disbursed, or paid in connection with, a presidentially declared major
> disaster or emergency (as those terms are defined in section 102 of the
> Robert T. Stafford Disaster Relief and Emergency Assistance Act (42
> U.S.C. 5122)), or affects a financial institution, such person shall be
> fined not more than $1,000,000 or imprisoned not more than 30 years,
> or both.

197.    Defendants Duggan, Lewand, and the DDA actions derived or were intended to devise, a scheme or artifice meant to defraud and/or obtain money or property, from the unlawful use of tax revenue from the levy of special millages approved by the voters without first obtaining approval from a subsequent vote from the respective electorates of the City of Detroit and Wayne County.

198.    Defendants utilized false or fraudulent pretenses, representations, omissions and/or promises to defraud and/or obtain money and/or property, through the passage of the January 11, 2017 Resolution falsely asserting that the Defendant DDA was seeking reimbursement for costs it was going to pay or "front" to finance the Additional Catalyst Development Project Improvements, prior to the issuance of the Additional Tax Increment Revenue Bonds.

199.    Defendants Duggan, Lewand, and the DDA transmitted or caused to be transmitted by means of wire, internet, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice when they transmitted telephone and cellular telephone calls, documents, facsimiles, emails, instant messages, text messages, and any other form of communication.

200.     Specially, Defendants Duggan and Lewand communicated by email, fax, instant messaging, text messaging, telephone and cellular telephone calls with other members of the Board of Directors, of the Defendant DDA, and with staff of the Defendant DDA, in an effort to convince the members of the Defendant DDA to approve the January 11, 2017 Resolution falsely asserting *that the Defendant DDA was seeking reimbursement to "itself"* for costs it was going to purportedly advance to finance the Additional Catalyst Development Project Improvements, prior to the issuance of the Additional Tax Increment Revenue Bonds.

201.     Violation of 18 U.S.C. §1343 is a felony punishable by up to 20 years of imprisonment and a fine of $1 million.

## Predicate Criminal Acts of Federal Mail Fraud Statute, 18 U.S.C. § 1341

202.     The Defendants Duggan, Lewand, and the DDA could be charged with and convicted of multiple, related violations of law, which form a pattern and practice, and which violations each, potentially punishable by more than one year in prison, constitute federal mail fraud.

203.     The Defendants Duggan, Lewand, and the DDA actions appear to be a criminal violation of the federal mail fraud statute under 18 U.S.C. § 1341.

204.     18 U.S.C. § 1341 provides:

    Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of

false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

205.    Defendants Duggan, Lewand, and the DDA devised or intended to

devise a scheme or artifice utilizing false or fraudulent pretenses,

representations, omissions and/or promises to defraud and/or obtain money

and/or property defraud and/or obtain money or property, all as a result of

the Defendant Lewand, on behalf and at the request of the Defendant

Duggan, and the other members of the Board of Directors of the Defendant

DDA, approving the January 11, 2017 Resolution that falsely asserts that the

Defendant DDA was seeking to reimburse "itself" for costs it was going to purportedly advance to finance the Additional Catalyst Development Project Improvements prior to the issuance of the Additional Tax Increment Revenue Bonds.

206.    Defendants Duggan, Lewand, and the DDA so utilized false or fraudulent pretenses, representations, omissions and/or promises to defraud and/or obtain money or property, as a result of the Defendant Lewand, on behalf of and at the request of, the Defendant Duggan, and the other members of the Board of Directors, approving the January 11, 2017 Resolution falsely asserting that the Defendant DDA was seeking reimbursement to "itself" for costs it was going to purportedly – but falsely stated – advance, to finance the Additional Catalyst Development Project Improvements prior to the issuance of the Additional Tax Increment Revenue Bonds.

207.    In order to achieve or attempt to achieve the fraudulent actions described in the preceding paragraphs, Defendants Duggan, Lewand, and the DDA sent or delivered correspondence and other documents t by the U. S. Postal Service and/or by wire to staff of the Defendant DDA, to members of the Board of Directors of the Defendant DDA, to legal counsel, to bond

counsel, to contractors, to representatives from various taxing jurisdictions, to citizens, and to others.

208.     Violation of 18 U.S.C. § 1341 is a felony punishable by up to 30 years of imprisonment and a fine of $1 million.

### Injury to Plaintiffs Wilcoxon's and Davis' Property

209.     Defendants Duggan's, Lewand's, and the DDA's actions have caused significant harm to Plaintiffs Wilcoxon's and Davis' property.

210.     Specifically, such actions have caused irreparable harm and injury to Plaintiffs Wilcoxon's and Davis' property because they have been denied their statutory, and fundamental constitutional right, to vote on the question of whether tax revenue generated from special millages as approved by the voters should be used to finance the construction of the new Little Caesars Arena and the Detroit Pistons' Corporate Headquarters and Practice Facility.

211.     Additionally, Plaintiffs Wilcoxon and Davis property rights have been injured individually because Plaintiffs Wilcoxon and Davis have had to use their personal funds to finance and pay certain aspects of this litigation, including court costs, attorney fees, and costs associated with printing and obtaining documents, all to seek to protect their property right to vote upon the issue so raised.

212.     Plaintiffs Wilcoxon's and Davis' injuries to their respective property is a direct and proximate result of the Defendants Duggan's, Lewand's and the DDA's aforementioned criminal actions.

213.     Specifically, Defendants Duggan, Lewand, and the DDA are fearful that if the question of whether to approve the use of tax revenue generated from the levy of the various special millages for a different purpose, *i.e.* to finance the construction costs associated with the new Little Caesars Arena and the Detroit Pistons' Corporate Headquarters and Practice Facility, it would not receive approval from a majority of the electors voting on the question.

214.     Accordingly, Defendants Duggan, Lewand and the DDA are committed to denying Plaintiffs Wilcoxon and Davis and the other registered and qualified voters of the City of Detroit and the County of Wayne, their statutory and fundamental constitutional rights to vote on this question.

215.     By denying Plaintiffs Wilcoxon and Davis their statutory and constitutional rights to vote, Defendants Duggan, Lewand, and the DDA are permitted to continue their unlawful use of tax revenue generated from the special millages to pay for the construction of the new Little Caesars Arena and the Detroit Pistons' Corporate Headquarters and Practice Facility without first obtaining approval from the respective electorates.

## COUNT X

## Civil RICO Claim-Award of Treble Damages Pursuant to 18 U.S.C. § 1964(c).

216.    Plaintiffs Davis and Wilcoxon incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

217.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs Davis and Wilcoxon, individually and collectively, respectfully request the Court to award treble damages, and including court costs and attorney fees.

218.    As noted, Plaintiffs Wilcoxon and Davis property have individually been injured because of Plaintiffs Wilcoxon and Davis having to use their personal funds to finance and pay certain aspects of this litigation, including court costs, attorney fees, and costs associated with printing and obtaining documents.

## VI.    CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiffs Wilcoxon and Davis pray that this Honorable Court GRANT the following requested relief:

A. Issue a declaratory judgment declaring that Mich. Comp. Laws § 211.24f requires the Defendants to obtain prior approval from a vote of the electorate prior to capturing and using revenue from the levy of the 18-

mills Detroit Public Schools' Operating Millage and the Wayne County Parks Millage for a different purpose.

B. Issue a declaratory judgment declaring that Mich. Comp. Laws § 380.1216 of the Revised School Code requires the Defendants to obtain prior approval from a vote of the electors prior to capturing and using revenue from the levy of the 18-mills Detroit Public Schools' Operating Millage for a different purpose.

C. Issue a declaratory judgment declaring that the Plaintiffs have a fundamental constitutional right to vote on the question of whether any tax revenues generated from the levy of the 18-mills Detroit Public Schools' Operating Millage and the Wayne County Parks Millage can be used by a governmental entity for a different purpose.

D. Issue a declaratory judgment declaring that it will be a violation of Plaintiffs' fundamental constitutional right to vote if Defendants are permitted to capture and use tax revenue generated from the levy of the 18-mills Detroit Public Schools' Operating Millage and/or the Wayne County Parks Millage, without first obtaining approval from the Plaintiffs and the other registered and qualified voters of the City of Detroit and Wayne County to use said funds for the sought different purposes.

E. Issue injunctive relief enjoining Defendants from using any tax revenue generated from the 18-mills Detroit Public Schools' Operating Millage and the Wayne County Parks Millage, without first obtaining approval from the registered voters of the City of Detroit and Wayne County authorizing the use of such funds for the sought different purposes.

F. Issue a declaratory judgment declaring that the Defendants DDA, Brownfield Authority and the Detroit City Council violated Plaintiff D. Etta Wilcoxon's substantive due process right by denying Plaintiff D.

Etta Wilcoxon's statutory right to vote granted under Mich. Comp. Laws § 380.1216 of the Revised School Code.

G. Issue a declaratory judgment declaring that the Defendant DDA violated Plaintiff Robert Davis' procedural due process rights by refusing to provide Plaintiff Robert Davis with a copy of the Defendant DDA's Amended Tax Increment Plan in accordance with Mich. Const. 1963, art. 9, § 23.

H. Issue a declaratory judgment declaring that the Defendant City Council cannot proceed with approving the Defendant DDA's Amended Catalyst and Tax Increment Financing Plans because proper notice was not provided to the governing bodies of the taxing jurisdictions as required under Mich. Comp. Laws §§ 125.1668 and 125.1669 of the DDA Act.

I. Issue Writ of Mandamus compelling Defendants to refund collected taxes to the taxpayers of tax revenue diverted and used to finance the construction of the new Little Caesars Arena and the Detroit Pistons' Corporate Headquarters and Practice Facility.

J. Grant Plaintiffs relief against the Defendants in accordance with the federal Civil RICO statute.

K. Award Plaintiffs Davis and Wilcoxon damages in accordance with 18 U.S.C.§ 1964(c).

L. Award Plaintiffs Davis and Wilcoxon their attorney fees and costs pursuant to 42 U.S.C. § 1988 against all of the named Defendants.

M. Grant any further relief the Court deems appropriate, just and proper.

Dated: June 12, 2017                    Respectfully submitted,

                                        */s/ ANDREW A. PATERSON*
                                        ANDREW A. PATERSON (P18690)
                                        Attorney for Plaintiffs
                                        2893 E. Eisenhower Pkwy
                                        Ann Arbor, MI 48108
                                        (248) 568-9712
                                        aap43@outlook.com


## CERTIFICATE OF LOCAL CERTIFICATION

I, ANDREW A. PATERSON, certify that this document complies with
Local Rule 5.1(a), including: double-spaced (except for quoted materials and
footnotes); at least one-inch margins on the top, sides, and bottom; consecutive
page numbering; and type size of all text and footnotes that is no smaller than 10-
1/2 characters per inch (for non-proportional fonts) or 14 point  (for proportional
fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

                                        /s/ *ANDREW A. PATERSON*
                                        ANDREW A. PATERSON (P18690)
                                         Attorney for Plaintiffs
                                        2893 E. Eisenhower Pkwy
                                        Ann Arbor, MI 48108
                                        (248) 568-9712
                                        aap43@outlook.com

## CERTIFICATE OF SERVICE

I, ANDREW A. PATERSON, certify that the foregoing document(s) was filed and served via the Court's electronic case filing and noticing system (ECF) this 12th day of June, 2017, which will automatically send notification of such filing to all attorneys and parties of record registered electronically.

Respectfully submitted,

/s/ ANDREW A. PATERSON
ANDREW A. PATERSON (P18690)
Attorney for Plaintiffs
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com