UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS, et al.,

       Plaintiffs,

vs.

DETROIT DOWNTOWN
DEVELOPMENT AUTHORITY, et al.,

       Defendants.
_____/

Case No. 17-cv-11742
Hon. Mark A. Goldsmith

**OPINION & ORDER
GRANTING IN PART DEFENDANTS' SECOND MOTION FOR SANCTIONS (Dkt. 34);
GRANTING IN PART DEFENDANTS' AMENDED MOTION FOR SANCTIONS (Dkt. 77); DENYING DEFENDANTS' JOINT MOTION FOR SANCTIONS (Dkt. 23);
DENYING DEFENDANTS' MOTION FOR RULE 11 SANCTIONS (Dkt. 76); AND
DENYING DEFENDANTS' MOTION TO STRIKE (Dkt. 83)**

    This matter is before the Court on Defendants' joint motion for sanctions (Dkt. 23); second motion for sanctions (Dkt. 34); motion for Rule 11 sanctions (Dkt. 76); amended motion for sanctions (Dkt. 77); and joint motion to strike Plaintiffs' response (Dkt. 83).[1] For the reasons that follow, the Court grants in part the second motion for sanctions (Dkt. 34) and amended motion for sanctions (Dkt. 77), and denies all other motions.

**I. BACKGROUND**

---

[1] Not all defendants have joined every motion for sanctions. Defendants Detroit Brownfield Redevelopment Authority, Detroit City Council, Detroit Downtown Development Authority, Mike Duggan, and Thomas Lewand have brought at least one of the motions for sanctions. For ease of reference, the Court will use "Defendants" when referring to the parties that brought each motion; it should be understood that the Court is only referring to the specific defendants that brought the motion at issue.

1

This lawsuit arose out of the relocation of the Detroit Pistons professional basketball team from Auburn Hills, Michigan to the Little Caesars Arena in Detroit. Plaintiffs Robert Davis and Etta Wilcoxon are residents of Wayne County who claimed that Defendants planned to unlawfully use revenue generated from the Detroit Public Schools operating millage and the 2016 Wayne County Parks millage to fund certain aspects of the Pistons' relocation. Plaintiffs alleged that this violated their fundamental rights to vote, then later amended their complaint to add claims for violations of substantive and procedural due process and of the Racketeering Influenced Corrupt Organization ("RICO") Act. See Compl. (Dkt. 1); Am. Compl. (Dkt. 15).

Plaintiffs filed the instant lawsuit on June 1, 2017, and filed an emergency motion for a temporary restraining order or preliminary injunction four days later (Dkt. 8). The day before the Defendants' response to this emergency motion was due, Plaintiffs filed a second emergency motion, for a declaratory judgment with respect to Count VII of the amended complaint (Dkt. 19). Defendants filed a motion to sanction Plaintiffs for the filing of this second emergency motion on June 14, 2017 (Dkt. 23).

Plaintiffs then filed a motion to strike Defendants' response to the emergency motion for a TRO and/or preliminary injunction (Dkt. 25). Defendants sought sanctions a second time for the motion to strike (Dkt. 34). On June 19, 2017, the Court denied the emergency motion for a TRO or preliminary injunction (Dkt. 47).

On June 27, 2017 Plaintiffs filed a separate complaint, Davis v. Detroit Public School Community District, No. 17-cv-12100 ("Davis II"), raising different claims against different defendants, but again seeking to prevent the use of school operating millage to fund the Pistons' relocation. Three days later, Defendants served Plaintiffs with a copy of a motion for sanctions under Rule 11of the Federal Rules of Civil Procedure. See 6/30/2017 Email, Ex. 1 to Pl. Resp. to

Am. Mot. for Sanctions (Dkt. 78-1). On July 1, 2017, Plaintiffs filed a notice of voluntary dismissal of the instant case (Dkt. 62).

Defendants filed a joint motion for sanctions pursuant to Federal Rule of Civil Procedure 11 (Dkt. 76) and an amended motion for sanctions pursuant to 28 U.S.C. § 1927, this Court's inherent authority, and 42 U.S.C. § 1988 (Dkt. 77) on September 6, 2017.

## II. ANALYSIS

In the various motions for sanctions, Defendants argue that this Court should impose sanctions pursuant to 28 U.S.C. § 1927, this Court's inherent authority, 42 U.S.C. § 1988, and Federal Rule of Civil Procedure 11. The Court will address each argument in turn.

### A. Sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority

Section 1927 of Title 28 provides that attorneys' fees may be awarded where an attorney "so multiplies the proceedings in any case unreasonably and vexatiously[.]" Sanctions may be appropriate when an attorney knows or reasonably should know that her claim is frivolous, or that her litigation tactics will "needlessly obstruct the litigation of nonfrivolous claims." Jones v. Cont'l Corp., 789 F. 2d 1225, 1230 (6th Cir. 1986). The court need not find bad faith on the part of the sanctioned party. Dixon v. Clem, 492 F. 3d 665, 679 (6th Cir. 2007); see also In re Ruben, 825 F. 2d 977, 983-984 (6th Cir. 1987) (noting that "a relaxed standard" is applicable to § 1927 sanctions, as a court may assess fees against an attorney "despite the absence of any conscious impropriety") (emphasis in original). However, "[s]imple inadvertence or negligence that frustrates the trial judge will not support a sanction under section 1927." Ridder v. City of Springfield, 109 F.3d 288, 298 (6th Cir. 1997); see also Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, 465 F.3d 642, 646 (6th Cir. 2006) ("§ 1927 sanctions require . . . something more than negligence or incompetence.").

Defendants also urge the Court to impose sanctions under its inherent authority. "A district judge has inherent equitable power to award attorneys' fees for 'bad faith' or frivolous conduct of a case," whether against a party or against her attorney. In re Ruben, 825 F. 2d at 983. The court may sanction a party "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) (internal quotations omitted). To impose sanctions under this bad faith standard, Sixth Circuit law requires a district court to find: (i) the claims advanced were meritless; (ii) counsel for the offending party knew or had reason to know the claims were meritless; and (iii) the motive for filing the suit was an improper purpose such as harassment. Metz v. Unizan Bank, 655 F.3d 485, 489 (6th Cir. 2011). Although the filing of a meritless claim may be evidence of bad faith, the "mere fact that an action is without merit does not amount to bad faith." BDT Prods., Inc. v. Lexmark Intern, Inc., 602 F.3d 742, 753 (6th Cir. 2010). "[T]he court must find something more than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." Id. (emphasis in original). This "something more" could be a finding that the party filed suit for purposes of harassment or delay, or for other improper reasons, see Big Yank Corp. v. Liberty Mut. Ins. Co., 125 F.3d 308, 314 (6th Cir. 1997); a finding that the plaintiff had improperly used the courts by filing a meritless lawsuit and withholding material evidence, First Bank of Marietta, 307 F.3d at 523 n. 18; or a finding that the party was delaying or disrupting the litigation or hampering enforcement of a court order, Chambers, 501 U.S. at 46.

Defendants argue that Plaintiffs brought their claims for an improper purpose; that is, to disrupt the financing of the Little Caesars Arena "through the mere pendency of the litigation" and to promote their own political careers. Defs. Mot. at 4 (Dkt. 77). Defendants argue that the emergency motion for a TRO or preliminary injunction did not attempt to show irreparable harm;

that Plaintiffs publicized this action online and attempted to gain media exposure; that Plaintiffs filed frivolous motions[2] in an attempt to prevent Defendants from fully responding to their motion for a TRO or preliminary injunction; and that Plaintiffs voluntarily dismissed this case when it appeared that a ruling on the Defendants' motion to dismiss was imminent. Id. at 4-5. Defendants also claim that Plaintiffs timed the filing of their claims in order to cause maximum prejudicial effect, noting that Plaintiff Wilcoxon waited "more than four and a half years from the November 2012 DPS millage" and Plaintiff Davis "waited more than ten months from the August 2016 election renewing the Parks millage" before raising their objections. Id. at 5-6.

Finally, Defendants argue that Plaintiffs' claims were frivolous. Id. at 8-16. According to Defendants, counts I-IV of the amended complaint were frivolous because Plaintiffs did not cite a single case in support of their theory that they were denied the right to vote or denied substantive due process. Defendants also argue that count V of the amended complaint was frivolous because a claim under the Michigan Freedom of Information Act ("FOIA") is not a federal constitutional claim; they maintain that this claim was especially frivolous because this Court had rejected a previous argument from Plaintiff Davis that his procedural due process rights were violated by a denial of a FOIA request. Defendants next argue that counts VII and VIII were frivolous because Plaintiffs clearly did not have standing under Michigan law. Finally, Defendants argue that

---

[2] Specifically, Defendants mention Plaintiffs' emergency motion for declaratory judgment with respect to count VII of the first amended complaint (Dkt. 19) and Plaintiffs' motion to strike (Dkt. 25). Defendants first requested sanctions pursuant to 28 U.S.C. § 1927 and this Court's inherent authority for the filing of Plaintiffs' emergency motion in their joint motion for sanctions (Dkt. 23), where they argued that there was no basis for an emergency and that the motion was filed solely to distract Defendants from responding to Plaintiffs' <u>other</u> emergency motion. Defendants then filed a second motion for sanctions pursuant to 28 U.S.C. § 1927 and this Court's inherent authority for the filing of Plaintiffs' motion to strike (Dkt. 34), which Defendants argued was baseless.

5

Plaintiffs' RICO claims were frivolous because the defendants named were not subject to RICO liability, and Plaintiffs did not plead an injury to property or business.

Plaintiffs respond that they did not assert frivolous claims or unreasonably multiply the proceedings in this case, and stressed that the court must find "something more" than that a party knowingly pursued a meritless claim or action in order to impose sanctions pursuant to its inherent authority. Pls. Resp. at 3-4 (Dkt. 80).[3]

The Court will impose sanctions under 28 U.S.C. § 1927 with respect to some of Plaintiffs' claims. Plaintiffs had no basis for bringing the RICO and FOIA claims against Defendants, which were asserted in the amended complaint. Plaintiffs should have known that they lacked standing to raise a RICO claim, as they had not sustained an injury to "business or property" as required by 18 U.S.C. § 1964(c). Further, Plaintiffs' claim that a denial under FOIA amounted to a violation of procedural due process was frivolous. As this Court previously has stated, "Davis fails to appreciate that [Defendants] [are] not the cause of his alleged deprivation. It is the statute — not [Defendant's] action — that has deprived him of access to the documents he seeks. Thus his attack is not properly one for a procedural due process violation; the lack of adequate process has caused him no harm." Davis v. Robert, No. 15-cv-12076, 2016 WL 1084683, at *4 (E.D. Mich. Mar. 21, 2016). The Court, therefore, awards sanctions to Defendants Detroit Downtown Development

---

[3] Plaintiffs' response was untimely, and Defendants filed a motion to strike the filing (Dkt. 83). The Court will deny Defendants' motion to strike and consider Plaintiffs' response. There is no prejudice to Defendants and, furthermore, Plaintiffs should be heard when the issue is the imposition of sanctions against them and/or their counsel.

Authority and Detroit Brownfield Redevelopment Authority under 28 U.S.C. § 1927 for the costs those Defendants incurred defending against these frivolous claims.[4]

The Court also awards § 1927 sanctions for costs incurred by Defendants Detroit Downtown Development Authority and Detroit Brownfield Redevelopment Authority in responding to Plaintiffs' motion to strike (Dkt. 25). Plaintiffs' argument that Defendants' response brief was forty-one pages was clearly without merit. Plaintiffs claimed that <u>all</u> pages, including the pages containing simply the case caption or the table of contents, should count towards Defendants' thirty-page limit, while the Local Rules are clear that the <u>text</u> of the brief counts towards the page limit. <u>See</u> L.R. 7.1(d)(3). Plaintiffs' actions needlessly obstructed the litigation of non-frivolous claims at a time when both this Court and the parties were expending considerable energy to resolve the litigation on an expedited basis.

Nonetheless, the other claims asserted in the amended complaint were not frivolous as to warrant sanctions. Plaintiffs' claims regarding the violation of their right to vote, while not based on existing precedent, was not <u>contrary</u> to any existing authority.[5] There was no precedent rejecting the claim that millage proceeds spent without voters' approval, in a way that arguably requires a vote of the people under state law, violates the fundamental right to vote, and Plaintiffs put forth a good-faith argument for an extension of the law. Plaintiffs also argued that such a denial of the right to vote violated substantive due process. While recent Sixth Circuit precedent

---

[4] Although Defendants Mike Duggan and Thomas Lewand joined in the motion seeking sanctions for the filing of the amended complaint, they did not file a response to it and, therefore, have no legal expense for which they can be compensated.

[5] Defendants point to Sixth Circuit authority holding that the Constitution does not require a state to conduct a ballot initiative, <u>Taxpayers United for Assessment Cuts v. Austin</u>, 994 F.2d 291 (6th Cir. 1993), but neither that case nor other authority cited by Defendants holds that the right to vote is not implicated where ballot-authorized funds are allegedly misused.

has narrowly restricted the circumstances in which a violation can be said to have occurred, see Phillips v. Snyder, 836 F.3d 707 (6th Cir. 2016), a substantive due process right to vote may be implicated upon a certain showing of "fundamental unfairness." Plaintiffs should not be faulted for arguing that this case was an instance where their due process rights were implicated. Thus, although the right-to-vote claims were ultimately unsuccessful, they were not frivolous.

Further, although Defendants argue that Plaintiffs did not have standing to bring the state-law claims, Michigan's standing doctrine changed as a result of a 2010 Michigan Supreme Court decision, Lansing Schools Education Association v. Lansing Board of Education, 792 N.W.2d 686 (Mich. 2010). In an opinion in Davis II, this Court noted that Lansing Schools was unclear regarding the requirements for standing, even though subsequent cases from lower Michigan courts had provided some clarification. See Davis v. Detroit Pub. Sch. Cmty. Dist., No. 17-12100, 2017 WL 3129838, at *3 (E.D. Mich. July 24, 2017).

The Court also denies the motion for sanctions with respect to the filing of Plaintiffs' emergency motion for a declaratory judgment with respect to count VII of the amended complaint. Plaintiffs explained the reason they believed that immediate consideration was warranted in their motion – the upcoming Detroit City Council meeting – and although Defendants suggest that Plaintiffs had ulterior motives for the timing of the filing of the motion, there is nothing to suggest that Plaintiffs did not simply file the motion as soon as they thought they were able to put forth a compelling argument. "The purpose [of Section 1927 sanctions] is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." Red Carpet Studios, 465 F.3d at 646. Plaintiffs' conduct there cannot be said to be any more than zealous advocacy.

As such, the Court stops short of finding any bad faith on the part of Plaintiffs, such that sanctions would be warranted under this Court's inherent authority. First Bank of Marietta, 307

F.3d at 517 ("[T]he imposition of inherent power sanctions requires a finding of bad faith . . . or conduct that is tantamount to bad faith."). Although Defendants argue that Plaintiffs brought their claims to disrupt the financing of the Little Caesars arena, this is not improper. Plaintiffs apparently believed that such financing was unlawful and were thus well within their rights to file arguably meritorious claims to attempt to prevent it. To the extent Defendants claim that Plaintiffs filed claims they knew to be meritless solely to postpone financing, the Court disagrees. As Defendants have noted, Plaintiffs' filings were consistently made on an "emergency" basis with the goal of resolving the litigation as soon as possible. And although the record reflects that there may have been election or publicity-seeking motivations behind this case, the record does not establish that such motives clearly dominated and neutralized other arguably public interest motives. Therefore, the Court cannot conclude that the case was brought for an "improper purpose." Accordingly, the Court declines to impose sanctions under its inherent authority.

### B. Sanctions pursuant to 42 U.S.C. § 1988

Defendants also argue that sanctions are appropriate under 42 U.S.C. § 1988, which provides, "[i]n any action or proceeding to enforce a provision of sections . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . ." 42 U.S.C. § 1988(b). "An award of attorney fees against a losing plaintiff in a civil rights action 'is an extreme sanction, and must be limited to truly egregious cases of misconduct.'" Riddle v. Egensperger, 266 F. 3d 542, 547 (6th Cir. 2001) (quoting Jones v. Cont'l Corp., 789 F. 2d 1225, 1232 (6th Cir. 1986)). A prevailing defendant should only recover if the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Wayne v. Village of Sebring, 36 F.3d 517, 530 (6th Cir. 1994).

9

As an initial matter, it is not clear that Defendants are the "prevailing party" under the statute. The Sixth Circuit has noted that "[w]hether a defendant who obtains a voluntary dismissal is a prevailing party for purposes of § 1988 remains an open question" in this circuit. Wolfe v. Perry, 412 F.3d 707, 722 (6th Cir. 2005) (declining to address the issue because it was not raised in the district court). Defendants argue that the Supreme Court recently explained the meaning of a "prevailing party" under 42 U.S.C. § 2000e-5(k) in CRST Expedited, Inc. v. EEOC, 136 S. Ct. 1642 (2016), holding that "a party is a 'prevailing party' under a fee shifting statute if there is a material change to the parties' relationship that is marked by 'judicial imprimatur.'" Defs. Mot. at 16. Here, Defendants claim, there is a material change in the relationship of the parties, due to Plaintiffs' voluntary dismissal; because the Court held a TRO hearing and issued an opinion stating that the claims were not likely to succeed, the change received judicial imprimatur. Plaintiffs respond that since their action was dismissed voluntarily without prejudice, there was no "prevailing party." Pls. Resp. at 7.

Even if the Court were to determine that, in this case, Defendants could be considered the prevailing party, an award of attorney fees against a plaintiff is "an extreme sanction." Jones, 789 F.2d at 1232. While this Court has admittedly determined that Plaintiffs asserted some frivolous claims in its amended complaint, this is not a "truly egregious case[] of misconduct." Id. Thus, in its discretion, the Court will deny the request for sanctions pursuant to § 1988.[6]

---

[6] Even if this Court were to award sanctions pursuant to § 1988, Defendants would not recover any more than they are already recovering under § 1927 sanctions; that is, they will recover the costs that they spent responding to Plaintiffs' frivolous claims. See Fox v. Vice, 563 U.S. 826, 834 (2011) ("§ 1988 serves to relieve a defendant of expenses attributable to frivolous charges. The plaintiff acted wrongly in leveling such allegations, and the court may shift to him the reasonable costs that those claims imposed on his adversary. That remains true when the plaintiff's suit also includes non-frivolous claims. The defendant, of course, is not entitled to any fees arising from these non-frivolous charges.") (internal citations omitted).

### C. Sanctions pursuant to Rule 11

Finally, Defendants seek sanctions under Federal Rule of Civil Procedure 11. Rule 11(b) provides:

> (b) By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the persons' knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed. R. Civ. P. 11(b)(1)-(3). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

Defendants suggest that this Court could impose a variety of sanctions, including requiring Plaintiffs and their counsel to post bond prior to filing actions in this district or prior to appealing any decision arising out of the facts alleged in this case, requiring Plaintiffs and counsel to seek certification from a magistrate judge that their claims are not frivolous prior to filing an action in this district, and imposing monetary sanctions, among other suggestions. Defs. Mot. at 21-23.

A motion filed pursuant to Rule 11 must be served on opposing counsel at least 21 days before it is filed with the court. Fed. R. Civ. P. 11 (c)(2). "[I]f the challenged paper, claim, defense,

contention, or denial is withdrawn or appropriately corrected within 21 days after service," the motion must not be filed. Id.

Here, Defendants served Plaintiffs' counsel with a copy of the motion for sanctions on June 30, 2017. Plaintiffs filed an amended notice of voluntary dismissal the next day, July 1, 2017. Defendants acknowledge that sanctions are ordinarily not appropriate where the party corrects their alleged Rule 11 violation within 21 days after service of the motion. Defs. Mot. at 5. However, they argue that the claims filed in Davis I were not withdrawn or corrected, since Plaintiffs filed Davis II, which Defendants describe as a "nearly identical action." Defendants argue that they were never relieved of the burden of defending against frivolous claims, and allowing Plaintiffs' actions to go unpunished would be contrary to both Rule 11 and the public policy concerns of Bigger v. Pontiac, 210 N.W. 2d 1 (Mich. 1973). Id.; Defs. Reply at 3 (Dkt. 79).

Although Plaintiffs had the same goal in Davis II as in Davis I — that is, to prevent the use of school operating millages to fund the relocation of the Detroit Pistons — the actions were not "nearly identical." The Davis II claims were different, based on different events and different legal theories. The defendants were different as well — no defendant named in Davis I was also named in Davis II, although the Detroit Downtown Development Authority and the Detroit Brownfield Redevelopment Authority successfully moved to intervene in Davis II. As this Court wrote in its July 7, 2017 Order Denying Defendant's Motion to Strike Plaintiffs' Notice of Voluntary Dismissal,

> The complaint in Davis II addresses some matters not before this Court, such as constitutional claims unique to those defendants' alleged treatment of Plaintiff Davis at a school board meeting, as well as those defendants' state-law authority to place issues on a ballot. Count V of the Davis II complaint does raise the same purely legal question that Plaintiffs sought to put before this Court in their proposed second amended complaint (Dkt. 46-1); but that count had

> not yet made it into this lawsuit. Further, Plaintiffs may well have
> wanted a new lawsuit for their claims against DPS to avoid the delay
> and risk attendant to seeking to amend their complaint in this action.

7/7/2017 Order at 6 (Dkt. 72). Because there were salient differences between the two actions, the Court finds that the claims were all adequately withdrawn for purposes of Rule 11.

Sanctions under Rule 11 are not available.

### III. CONCLUSION

For the reasons set forth above, Defendants' second motion for Sanctions (Dkt. 34) and amended motion for sanctions (Dkt. 77) are granted in part; Defendants' joint motion for sanctions (Dkt. 23), joint motion for sanctions (Dkt. 76), and joint motion to strike Plaintiffs' response (Dkt. 83) are denied.

On or before February 9, 2018, Defendants Detroit Brownfield Redevelopment Authority and Detroit Downtown Development Authority shall file an affidavit setting forth the fees and costs incurred in responding to the claims identified as frivolous in the amended complaint and the motion to strike. On or before February 23, 2018, Plaintiffs shall file any response, not exceeding 10 pages (exclusive of attachments). The Court will thereafter notice a hearing or issue an order for the amount of the sanctions.

SO ORDERED.


Dated: January 26, 2018                           s/Mark A. Goldsmith
                                                  HON. MARK A. GOLDSMITH
                                                  United States District Judge

**<u>CERTIFICATE OF SERVICE</u>**

   The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 26, 2018.

               <u>s/Marlena Williams</u>
               MARLENA WILLIAMS
               Case Manager