UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS, et al.,

        Plaintiffs,                        Case No. 17-cv-11742
                                                          Hon. Mark A. Goldsmith
vs.

DETROIT DOWNTOWN
DEVELOPMENT AUTHORITY, et al.,

        Defendants.
_____/

## OPINION & ORDER
## IMPOSING SANCTIONS

On January 26, 2018, this Court issued an opinion and order granting in part and denying in part Defendants' various motions for sanctions. Davis v. Detroit Downtown Dev. Auth., No. 17-11742, 2018 WL 564235 (E.D. Mich. Jan. 26, 2018). The Court ordered Defendants to "file an affidavit setting forth the fees and costs incurred in responding to the claims identified as frivolous in the amended complaint and the motion to strike." Id. at *7. Defendants timely filed affidavits (Dkts. 86 & 87), and Plaintiffs filed a response (Dkt. 97). After reviewing the affidavits, the Court determined that the information provided was insufficient for the Court to accurately determine the fees incurred by Defendants and ordered Defendants to file revised affidavits. 5/30/2018 Order (Dkt. 100). Defendants did so (Dkts. 101 & 102), and Plaintiffs filed a response (Dkt. 105).[1] After reviewing the parties' filings, the Court awards sanctions in the amount of $13,506.00.

---

[1] Defendants filed a motion to strike (Dkt. 104) the first response filed by Plaintiffs (Dkt. 103), arguing that the response contained "scandalous and defamatory" allegations. Plaintiffs then filed

1

# I.     BACKGROUND

In its order granting in part and denying in part Defendants' motions for sanctions, the Court awarded sanctions to Defendants Detroit Downtown Development Authority ("DDA") and Detroit Brownfield Redevelopment Authority ("BRA") pursuant to 28 U.S.C. § 1927 for costs incurred: (1) defending against the Racketeer Influenced Corrupt Organizations Act ("RICO") claim in Plaintiffs' amended complaint, Davis, 2018 WL 564235, at *3; (2) defending against the Freedom of Information Act ("FOIA") claim in Plaintiffs' amended complaint, id.; and (3) responding to Plaintiffs' motion to strike, id. at *4.

Defendants filed affidavits stating that they did not keep time separately for each legal theory advanced by Plaintiffs, so they made a good-faith effort to determine how much time was spent responding to the RICO and FOIA claims. See 2/9/2018 Fink Aff. ¶ 6 (Dkt. 86); 2/9/2018 Phillips Aff. ¶ 6 (Dkt. 87). To that end, the law firm Kotz Sangster Wysocki, P.C. ("KSW") says that it spent a total of 65.8 hours responding to the RICO and FOIA claims and the motion to strike. Specifically, attorney Jeff Sangster, who charges $330/hour, spent three hours responding to the RICO and FOIA claims in Defendants' motion to dismiss and three hours preparing motions for sanctions. Attorney Anthony Sciara, who charges $245/hour, spent 8.4 hours preparing motions for sanctions. Attorney Tyler Philips, who charges $170/hour, spent three hours responding to Plaintiffs' motion to strike and 48.4 hours preparing the motions for sanctions. See generally

---

an amended response, which they claim resolves Defendants' concerns. As Plaintiffs' first response is no longer their operative filing, the Court grants Defendants' motion to strike and strikes Plaintiffs' response (Dkt. 103).

2

6/13/2018 Phillips Aff. (Dkt. 101). The total amount of attorneys' fees incurred by KSW was $12,776.[2]

Defendants' other counsel, Fink & Associates Law ("FAL") also submits that it spent 90.75 hours working on the defense of frivolous claims and charged a blended rate of $300/hour. Specifically, five attorneys spent 39.75 hours responding to the RICO and FOIA claims in the motion to dismiss, 13.75 hours preparing portions of the reply brief in support of the motion to dismiss that relate to the RICO and FOIA claims, three hours responding to the motion to strike, and 34.25 hours responding to the RICO and FOIA-related claims in Plaintiffs' motion for leave to amend their complaint. See generally 6/13/2018 Fink Aff. (Dkt. 102). The total amount of attorneys' fees incurred by FAL was $27,225.[3]

## II. ANALYSIS

Section 1927 of Title 28 provides,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

---

[2] In its original affidavit, KSW stated that the total amount of attorneys' fees incurred were $16,320.70. See 2/9/2018 Phillips Aff. ¶ 7. However, KSW did not sufficiently explain the breakdown of its fees in this affidavit – it simply provided a copy of its invoice and a total fee amount – and KSW does not explain the discrepancy between the total number of hours in the 2/9/2018 affidavit and the 6/13/2018 affidavit. Because the 6/13/2018 affidavit provides a more specific breakdown, the Court will rely on the hours provided therein.

[3] Like KSW, FAL provided an original affidavit that stated that its total fee was $27,900 and attached its invoice. See 2/9/2018 Aff. ¶ 8 (Dkt. 86). However, this number differs from the more detailed breakdown provided in FAL's 6/13/2018 affidavit; as with KSW, the Court will rely on the more detailed affidavit.

"'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." Adcock-Ladd v. Sec. of Treasury, 227 F.3d 343, 349 (6th Cir. 2000) (citing Reed v. Rhoades, 179 F.3d 453, 471 (6th Cir. 1999)). To calculate a reasonable fee, district courts use the "lodestar" method, which requires a simple calculation: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). A reasonable hourly rate is measured against "the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonable expect to command within the venue of the court of record." Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004). The Court may look to "the most recent Economics of Law Practice survey issued by the State Bar of Michigan to determine the prevailing market rate." Somber v. Utica Cmty. Schs., Nos. 13-11810, 13-14022, 2017 WL 6462341, at *2 (E.D. Mich. Sept. 8, 2017).

In a case involving sanctions under 28 U.S.C. § 1927, the lodestar approach is the "starting point" for determining an appropriate sanction; however, because the purpose of § 1927 sanctions is "'to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy,' the amount ultimately awarded need not make a party whole or constitute full restitution." Infocision Mgmt. Corp. v. Foundation for Moral Law, Inc., Nos. 08-1342, 08-1412, 09-951, 2012 WL 369283, at *1 (N.D. Ohio Feb. 3, 2012) (quoting Red Carpet Studios v. Sater, 564 F.3d 642, 646 (6th Cir. 2006)) (internal citations and alterations omitted). Thus, the Court must award an amount of attorneys' fees and costs that will "deter and punish." Tilmon-Jones v. Boladian, 581 F. App'x 493, 498 (6th Cir. 2014) (upholding district court's decision to impose an award of only $20,000, "even though the court indicated that Bridgport's fees [of $148,000] may

4

be reasonable under the 'lodestar' analysis," as "the goal of 28 U.S.C. § 1927 [is] not to make a party whole, but to deter and punish").

**A. Lodestar Calculation**

Here, Defendants' attorneys have set forth the number of hours that they approximated spending responding to Plaintiffs' frivolous filings. While the attorneys state that they did not keep track of the specific time spent responding to each claim raised in the amended complaint, they have engaged in a good-faith effort to estimate how much time was spent specifically regarding the RICO and FOIA claims. To that end, FAL allocated approximately ninety hours to defending against the RICO and FOIA claims and the motion to strike, out of a total of 625.5 hours spent representing Defendants in June 2017. See 2/9/2018 Fink Aff. ¶ 6. This is about fourteen percent of the total work performed by FAL for Defendants in the month of June. KSW says that its attorneys also made a good-faith effort to determine how much time should be allotted to defending against the RICO and FOIA claims, but it does not provide any information about the total numbers of hours expended on work for DDA and BRA, nor the total number of hours spent on the motion to dismiss.

The Court finds that Defendants' counsel's claimed hours expended far exceed the amount of time that it would reasonably take to respond to the RICO and FOIA claims. Between the two law firms, Defendants' counsel estimate that it took them 42.75 hours to prepare the RICO and FOIA portions of the motion to dismiss. 6/13/2018 Fink Aff. ¶ 7; 6/13/2018 Phillips Aff. ¶ 9. While the Court understands that research and drafting can be time-consuming, and that drafts must undergo multiple levels of review, this number is excessive. The dismissal of the RICO and FOIA claims was fairly straightforward, and Defendants devoted a relatively small portion of their motion to dismiss addressing these claims. The Court finds that fifteen hours – fourteen hours by

5

FAL and one hour by KSW – represents a more reasonable estimate of the number of hours expended. For these same reasons, the Court finds that seven hours is a reasonable number of hours to expend on RICO and FOIA claims in the reply brief in support of the motion to dismiss, rather than counsel's approximation of 13.75 hours expended, 6/13/2018 Fink Aff. ¶ 8.

Defendants' counsel say that they spent six hours, combined, on preparing a response to the motion to strike. 6/13/2018 Fink Aff. ¶ 9; 6/13/2018 Phillips Aff. ¶ 11. Counsel also approximate that they spent 34.25 hours preparing the response in opposition to Plaintiffs' motion for leave to amend their complaint, as it relates to the RICO and FOIA claims. 6/13/2018 Fink Aff. ¶ 11. The Court finds that six hours spent preparing a response to the motion to strike is reasonable; however, no more than ten hours is a reasonable number of hours to spend researching, analyzing, and drafting the response to the motion for leave to amend the complaint.

Finally, KSW states that it spent a combined 59.8 hours working on the second motion for sanctions (Dkt. 34, which sought sanctions regarding the motion to strike) and the portions of the amended motion for sanctions (Dkt. 77) that relate to the RICO and FOIA claims. 6/13/2018 Phillips Aff. ¶ 12. However, KSW later clarifies that this number represents the "total cumulative time spent researching, analyzing, and drafting, Dkts 34 and 77." Id. ¶ 13. KSW attorneys spent a total of 4.5 hours preparing the second motion for sanctions. Id. KSW also approximates that 15% of the total time spent researching and drafting the amended motion for sanctions was related to the RICO and FOIA issues in particular. Id. Therefore, KSW approximates spending 4.5 hours on the second motion for sanctions (Dkt. 34), and 8.3 hours on the RICO and FOIA portions of the amended motion for sanctions (Dkt. 77). The Court concludes that these, as well, are a reasonable number of hours to expend on this work.

As to Defendants' counsel's hourly rates, the Court finds that they are reasonable. KSW charged an hourly rate of $170/hour for an associate, $245/hour for a senior associate with twelve years of experience, and $330/hour for a partner. 6/13/2018 Phillips Aff. ¶ 3. According to the State Bar of Michigan's 2017 Economics of Law Practice survey, the median billing rate for an associate is $225/hour, and for a senior associate, $260/hour. See 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report, Ex. D to 6/13/2018 Phillips Aff., at 4 (Dkt. 101-4). The median billing rate for an equity partner is $300/hour; the mean billing rate is $329/hour. Id. Thus, the rates charged by KSW are consistent with rates charged by other Michigan attorneys.

As for FAL's blended rate of $300/hour, the State Bar survey provides that the median billing rate for an attorney in the Detroit area, but not downtown, is $225/hour. Id. at 5. However, in determining whether a rate was reasonable, the Court may also "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." Van Horn v. Nationwide Prop. & Cas. Ins. Co., 436 F. App'x 496, 499 (6th Cir. 2011). In an affidavit, FAL explains that the hourly rate of $300 was agreed upon by FAL and Defendants due to (1) the urgency of this matter and the need for it to be prioritized over other litigation; (2) the complexity of the issues involved; (3) the significant involvement of two of FAL's partners, David Fink and Darryl Bressack; and (4) the uniqueness of the litigation. 6/13/2018 Fink Aff. ¶ 5.

The Court finds that this explanation justifies FAL's blended rate. This litigation involved significant issues potentially affecting the future of the city of Detroit, which needed to be resolved on an extremely expedited schedule. Attorney David Fink's biography shows that he has experience representing the City of Detroit and other municipalities, and attorney Darryl Bressack

7

also has municipal law experience. See Exs. 1& 2 to 6/13/2018 Fink Aff. (Dkts. 102-1, 102-2). Mr. Fink's affidavit further notes that FAL's partners had "significant recent experience" involving tax increment finance issues. 6/13/2018 Fink Aff. ¶ 6. Further, Mr. David Fink and Mr. Bressack – both partners and the founding attorneys of FAL – performed more than half of the work hours that were expended responding to Plaintiffs' frivolous claims. FAL stresses that this litigation required "immediate and substantial time from FAL partners, including its senior partner." Id. The mean hourly rate for a managing partner is $300/hour, see 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report at 4, and the 75th percentile is $350/hour. Given the complexity of the issues involved in this case, the fast pace of the litigation, and the high level of direct involvement from FAL's partners, the Court concludes that the $300 per hour blended rate is reasonable.

Thus, the total lodestar calculation is $13,506.00, as broken down in detail in the chart below:

|  | **FAL** | **KSW** |
|---|---|---|
| RICO/ FOIA claims in motion to dismiss | **$4,200** (14hr x $300/hr) | **$330** (1hr x $330/hr) |
| RICO/ FOIA claims in reply | **$2,100** (7hr x $300/hr) | n/a |
| Response to Motion to Strike | **$900** (3hr x $300/hr) | **$510** (3hr x $170/hr) |
| RICO/ FOIA claims in amended motion for sanctions | n/a | **$1,551** ((.5hr x $300/hr) + (1hr x $245/hr) + (6.8hr x $170/hr)) |
| Second motion for sanctions | n/a | **$915** ((2.5hr x $170/hr) + (2hr x $245/hr)) |
| Response to motion for leave to amend | **$3,000** (10hr x $300/hr) | n/a |
| **Total** | **$10,200** | **$3,306** |

**B. Plaintiffs' Objections**

Plaintiffs put forth several reasons why Defendants should not be awarded their requested amount in attorneys' fees. First, Plaintiffs argue that Defendants devoted fewer than three pages of their thirty-nine-page motion to dismiss addressing the RICO and FOIA claims, and therefore Defendants should be reimbursed for only three hours of attorney time, at a rate of $200/hour. Pls. Resp. to Affs. at 5, 8 (Dkt. 97). The Court has already addressed this point and feels that the number of hours and the rates described above are appropriate.

Next, Plaintiffs argue that KSW's request for attorneys' fees should be rejected in its entirety. Plaintiffs argue that KSW seeks reimbursement for filing the motions for sanctions themselves, which were not associated with "responding to the claims identified as frivolous in the amended complaint and motion to strike." Pls. Resp. to Affs. at 6. In response, Defendants argue that the motions for sanctions were a "necessary and logical consequence" of Plaintiffs' frivolous filings, and that it would weaken the effect of sanctions for a litigant to be unable to recover the costs of filing a sanctions motion. Defs. Reply in Supp. of Affs. at 2 (Dkt. 99).

Neither party points to case law to support the position staked out. The Court's own research shows that several courts have concluded that "[t]he time, effort, and money a party must spend to get another party sanctioned realistically is part of the harm caused by that other party's wrongful conduct." Norelus v. Denny's, Inc., 628 F.3d 1270, 1298 (11th Cir. 2010); see also Blixseth v. Yellowstone Mtn. Club, LLC, 854 F.3d 626, 631 (9th Cir. 2017) ("Like Norelus, we conclude that the costs of obtaining sanctions may be included in a sanctions award under § 1927."); In re Royal Manor Mgmt., Inc., 525 B.R. 338, 366 (B.A.P. 6th Cir. 2015) (citing Norelus for the proposition that a court may include in the sanctions awarded under § 1927 the attorneys' fees incurred in obtaining the award). This is a reasonable approach given the language of 28 U.S.C. § 1927; the costs incurred in obtaining a sanctions award are, "in the statute's terms,

9

'incurred because of such conduct.'" Norelus, 628 F.3d at 1298 (quoting 28 U.S.C. § 1927). Thus, the Court sees no reason not to include costs arising from the sanctions proceedings in its calculation of the sanctions award.

Finally, Plaintiffs argue that KSW is attempting to "double bill" identical work done for DDA and BRA. Pls. Resp. to Affs. at 7. However, Defendants explain that they asked KSW to split any time expended on this litigation equally between DDA and BRA. See Rebecca Navin Aff., Ex. 1 to Defs. Reply in Supp. of Affs. in Supp. of Req. for Sanctions, ¶ 4 (Dkt. 99-1). Thus, Defendants explain, if two hours were spent on a task, one hour would be billed to DDA and one hour would be billed to BRA. Id. Plaintiffs' argument of double-billing is without merit.

The Court finds that the appropriate lodestar amount is $13,506.00. Further, the Court finds that this amount of sanctions is sufficient to punish and deter Plaintiffs' counsel from further frivolous filings. It represents the amount of work put in by eight attorneys across two law firms, solely to respond to claims and filings that Plaintiffs' counsel should have known were frivolous. Plaintiffs' counsel should consider this figure before attempting to file any future frivolous claims.

### III. CONCLUSION

For the reasons provided, the Court orders Plaintiffs' counsel to pay $13,506.00 to Defendants Detroit Downtown Development Authority and Detroit Brownfield Redevelopment Authority. Payment must be made by November 27, 2018.

SO ORDERED.

Dated: November 6, 2018                  s/Mark A. Goldsmith
   Detroit, Michigan                    MARK A. GOLDSMITH
                                            United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 6, 2018.

                                            s/Karri Sandusky
                                            Case Manager