UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ROBERT DAVIS,** and
**D. ETTA WILCOXON,**

    Plaintiffs,                      Case No. 17-cv-11742

                                  HON. MARK A. GOLDSMITH

v

**DETROIT DOWNTOWN DEVELOPMENT AUTHORITY,** *et. al*;

    Defendants.

___

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION REPORTING OUTCOME OF DISCOVERY TO COURT AND REQUESTING <u>ADDITIONAL SANCTIONS FOR CONTEMPT</u>**

    The sum and substance of Mr. Paterson's Response is that his bank records will show that he never had sufficient funds to pay the full amount of the ordered sanctions at any time from November 6, 2018 until shortly before he paid those sanctions on May 6, 2019.

    His Response does not even attempt to offer an explanation or a defense as to why he waited for this Court to enter an Order to Show Cause [ECF No. 112] before he informed the Court and defense counsel of his inability to pay. He does not explain why he did not reach out to defense counsel and ask to negotiate a payment plan of some kind. He does not explain why he thinks it is acceptable for an officer

1

of the court to simply ignore a court order, without seeking modification of that order.

On November 6, 2018, this Court entered its order, compelling payment no later than November 27, 2018. [ECF No. 107]. Mr. Paterson simply let that date pass. He did not advise counsel or the Court of his inability to respect that Order; nor did he seek relief from the Order; nor did he advise the court or counsel of his alleged inability to honor the Court's Order until compelled to Show Cause, on December 28, 2018. Mr. Paterson acknowledges this in his Response, conceding, "[a]dmittedly, Paterson did not timely remit payment or request other relief, including an extension of time to pay the sanction, from the Court." [ECF No. 143, PageID.3943].

In his Response, Mr. Paterson argues that transferring funds to his wife is simply the act of a dutiful husband, but Defendants in their Motion posited a less-noble explanation for those transfers, and Mr. Paterson chose to leave that explanation unchallenged. When asked if any of the funds transferred to his wife are used to pay creditors, he admitted that those funds are only used "from time to time [when] I'm whacked by one of the judges, I end up paying that." [ECF No. 140, PageID.3797, ECF No. 140-2, PageID.3850]. Mr. Paterson does not deny that he exercises his own discretion in deciding when to pay creditors and that he waits until he is "whacked" by a judge before making any payments.

And perhaps most notably, Mr. Paterson does not deny that he controls the cash flow that creates his appearance of poverty. As Defendants explained in their Motion:

> While large fluctuations in receivables could be random events, Mr. Paterson's testimony suggests that his billing and accounts receivable practices not only encourage such irregularities, but have been intentionally manipulated to shield Mr. Paterson's assets from creditors until such times as he needs it for emergency cash needs. He controls his receipts by when he chooses to 'physically bill' his clients. [ECF No. 140, PageID.3801-3802].

Not a word in Mr. Paterson's Response addresses this compelling inference from the convenient pattern of Mr. Paterson's income fluctuations.

Mr. Paterson chooses to ignore Defendants' assertion that "it was Mr. Paterson's actions or inactions that created [any claimed] 'financial impossibility' and therefore he cannot avail himself of the defense of impossibility." [ECF No. 148, PageID.3802-3803].

In his Response, Mr. Paterson claims he is now willing to produce to the Court in a sealed exhibit "all of [his] bank records from the relevant time periods…." [ECF No. 143, PageID.3948-3949]. But any such belated production to the Court raises serious concerns. A critical gap in his document production was explained in footnote 1 of the Motion:

> Mr. Paterson did not provide Chase Bank statements for the periods of July 24-August 21, 2018, September 25 and October 22, 2018 and November 24 and December 21 2018. Follow up requests have been

3

made but these statements have not been received. [ECF No. 140, PageID.3798].

If Mr. Paterson now produces those very statements to the Court, his non-cooperation in discovery will be confirmed. If he does not produce those statements, a key period at issue remains undisclosed, and he has failed to meet his burden of proof. *See Electrical Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Service Co.*, 340 F.3d 373, 379 (6th Cir. 2003) ("the…'present inability to comply' defense to civil contempt requires that the contemnor show that he is not responsible for the present inability to pay. If the contemnor cannot make this showing, then the…defense is unavailable." (internal citation omitted))

WHEREFORE, for the reasons specified in this Reply Brief and in Defendants' Motion and Brief in Support, the Defendants respectfully request that this Court enter an order, among other things:

(a) Initiating procedures under E.D. Mich. LR 83.22 to bar Mr. Paterson from practicing law in the Eastern District of Michigan;

(b) Imposing monetary sanctions against Mr. Paterson in the amount of their attorney fees, costs and expenses incurred directly as a result of by Mr. Paterson's inexcusable and contemptuous disregard of the Court's November 6, 2018 Order

4

(c) Imposing monetary sanctions against Mr. Paterson in an amount sufficient to deter future misconduct; and

(d) Granting any other relief for Defendants in this action that the Court deems just or equitable.

Respectfully submitted,

**FINK BRESSACK**

DATED: November 27, 2020

/s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
38500 Woodward Ave., Suite 350
Bloomfield Hills, Michigan 48304
Tel: 248.971.2500
Fax: 248.971.2600
dfink@finkbressack.com
*Attorneys for Defendants Detroit Downtown Development Authority and Detroit Brownfield Redevelopment Authority*

## CERTIFICATION OF BRIEF REQUIREMENTS

I, David H. Fink, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send such notification to all ECF attorneys of record.

                          **FINK BRESSACK**

By: /s/ Nathan J. Fink
     Nathan J. Fink (P75185)
     38500 Woodward Ave.; Suite 350
     Bloomfield Hills, Michigan 48304
     Tel: (248) 971-2500
     nfink@finkbressack.com