UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS, et al.,

        Plaintiffs,

vs.

DETROIT DOWNTOWN
DEVELOPMENT AUTHORITY, et al.,

        Defendants.
_____/

Case No. 17-cv-11742
HON. MARK A. GOLDSMITH

**OPINION & ORDER
GRANTING DEFENDANTS' MOTION REQUESTING ADDITIONAL SANCTIONS
FOR CONTEMPT (Dkt. 140)**

This matter is before the Court on Defendants Detroit Downtown Development Authority and Detroit Brownfield Redevelopment Authority's motion requesting additional civil contempt sanctions against Andrew Paterson, attorney for Plaintiffs Robert Davis and D. Etta Wilcoxon (Dkt. 140). For the reasons that follow, the Court grants Defendants' motion to the extent that Defendants seek sanctions for all reasonable costs incurred as a result of Paterson's contemptuous failure to comply timely with the Court's November 6, 2018 order.

## I. BACKGROUND

Earlier in this litigation, this Court ruled that Defendants were entitled to sanctions, pursuant to 28 U.S.C. § 1927, for costs incurred: (i) defending against the frivolous claim brought by Plaintiffs under the Racketeer Influenced Corrupt Organizations Act; (ii) defending against Plaintiffs' frivolous Freedom of Information Act claim; and (iii) responding to Plaintiffs' clearly unmeritorious motion to strike certain filings. Davis v. Detroit Downtown Dev. Auth., No. 17-11742, 2018 WL 564235 (E.D. Mich. Jan. 26, 2018), aff'd, 782 F. App'x 455 (6th Cir. 2019).

1

After affidavits and responses were filed regarding the amount of the sanctions, the Court determined that Defendants were entitled to $13,506, which was to be paid by Paterson, as the attorney who had multiplied the proceedings by filing frivolous claims and a frivolous motion. Davis v. Detroit Downtown Dev. Auth., No. 17-CV-11742, 2018 WL 5800919 (E.D. Mich. Nov. 6, 2018), aff'd, 782 F. App'x 455 (6th Cir. 2019). The order set November 27, 2018 as the date by which payment was due. Id.

November 27 came and went without any payment by Paterson. Defs. Mot. at 2. Not only did Paterson fail to pay, but he also failed to seek any relief from the order or advise counsel for Defendants regarding his failure to pay. Id.

Pursuant to Defendants' request (Dkt. 111), the Court issued an order requiring Paterson to show cause why he should not be held in contempt, 12/14/18 Order (Dkt. 112). In his response to the show cause order (Dkt. 113), Paterson asserted, for the first time, that he lacked the financial resources to comply with the November 6 order. After holding a contempt hearing, the Court ordered that Defendants be allowed to take discovery regarding Paterson's ability to pay the sanctions owed. 4/12/19 Order (Dkt. 116). Ten days later, Defendants served Paterson with discovery requests pursuant to that order. Defs. Mot. at 2.

On May 6, 2019—a week after service of the discovery requests and over five months after payment was due—Paterson paid the sanctions in full. Satisfaction of Judgment (Dkt. 117). The next day, Paterson filed a motion seeking relief from his obligation to respond to Defendants' discovery requests (Dkt. 118), which the Court granted because the discovery was targeted at Paterson's noncompliance, not delay in compliance, 6/12/19 Order (Dkt. 121).

The June 12 order also authorized Defendants to "file a motion seeking sanctions on the theory that Mr. Paterson engaged in sanctionable conduct in avoiding prompt compliance" with

the November 6, 2018 order. Id. Consistent with this order, Defendants filed a motion for discovery and for additional sanctions (Dkt. 125). The motion was granted to the extent that Defendants requested discovery of Paterson's ability to pay. 3/3/20 Order (Dkt. 131).

Defendants served Paterson with requests for the production of documents regarding his income, assets, liabilities, and ability to pay the sanctions for the period between November 27, 2018 and the date of the motion (March 19, 2020). Defs. Mot. at 4. Paterson responded to Defendants' discovery requests with a production of documents that included Chase Bank statements, tax returns, and Bank of America Interest on Lawyers' Trust Accounts bank statements. Id. Paterson also appeared for a creditor examination deposition and gave testimony regarding the subject matter of the discovery on August 3, 2020. Id.

Following the period of discovery, Defendants filed the motion now before the Court, requesting additional sanctions for contempt. Paterson filed a response to this motion (Dkt. 143), and Defendants filed a reply (Dkt. 144).

The records that Paterson has made available for an assessment of whether he had the ability to pay the sanctions due under the November 6, 2018 order are incomplete. Despite repeated requests from Defendants, Paterson failed to provide a Chase statement for the period of November 24 to December 21, 2018—a document that would have been responsive to Defendants' March 19, 2020 document requests. Defs. Mot. at 4, 8 n.1. Paterson also did not provide a Chase statement for the period of September 25 to October 22, 2018, though he provided Chase statements for earlier periods in 2018.[1] Paterson does not dispute that he failed to provide these

---

[1] Defendants state that Paterson also failed to provide the statement for July 24 to August 21, 2018, Defs. Mot. at 8 n.1, but this statement is included on pages 20–21 of the document Defendants attach to their motion as Exhibit B (Dkt. 140-3), thereby indicating that Paterson produced this document.

3

records. In fact, in response to the instant motion, Paterson informed the Court that he would file a motion to file under seal all of his bank records from the relevant time periods from 2018 to 2019 for the Court's review. Pl. Resp. at 7–8. Paterson failed to do so, and he has not explained that failure.

The gist of the current motion is that Patterson has not met the prerequisites for demonstrating an inability to comply with the sanctions order within the timeframe mandated by the order. Defendants argue that Patterson's records, though incomplete, show that he had the ability to pay the award of sanctions when payment was due, as Patterson had income that exceeded his estimate of ordinary household expenses. To the extent there is any question regarding his ability to pay, Defendants argue that Patterson has manipulated his income—by deferring billing of his clients and by transferring large sums every month to his wife—to avoid paying his debts, including the award of sanctions. Defs. Mot. at 12–13.

As explained fully below, the Court agrees that Paterson has not met his burden of showing that he could not timely comply with the Court's order to pay sanctions. Because Paterson has not presented a full financial picture of his assets, income, and expenses for the relevant period, he has not met his burden of showing "categorically and in detail" that he could not pay the sanctions. See Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co., 340 F.3d 373, 384 (6th Cir. 2003) (punctuation modified). Further, by failing to respond to Defendants' argument of manipulation via deferred billing of clients, Paterson has tacitly acknowledged that any inability to pay was self-induced, which would defeat any purported justification for failure to pay. See Gascho v. Glob. Fitness Holdings, LLC, 875 F.3d 795, 802 (6th Cir. 2017). Additionally, Paterson's failure to explain why he continued to transfer large sums of money to his wife every month well in excess of the level of his household's expenses amounts

4

to a failure to meet his burden of showing that any inability to pay was not self-induced. See id. Paterson also fails to show that he took all reasonable measures to comply with the Court's order because he does not state that he attempted to bill his clients to raise funds or adjust his transfers to his wife to pay the sanctions. See id. Therefore, Defendants are entitled to be compensated for the legal costs incurred as a result of Paterson's contumacious conduct.

## II. ANALYSIS

A federal court has the power to levy sanctions, in the exercise of its discretion, against an individual who shows contempt for the court's authority by disobeying or resisting a lawful order or command. 18 U.S.C.A. § 401(3). Civil sanctions have two purposes: (i) to enforce compliance with court orders, and (ii) to compensate injured parties for losses sustained. Downey v. Clauder, 30 F.3d 681, 685 (6th Cir. 1994) (citing Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821 (1994)). In contrast, criminal sanctions are the appropriate vehicle to vindicate the authority of the court by punishing past acts of disobedience. Bagwell, 512 U.S. at 828.

A party moving for civil contempt sanctions has the initial burden of demonstrating "by clear and convincing evidence" that the contemnor "knowingly violated a definite and specific order of the court." Gascho, 875 F.3d at 800 (punctuation modified). Once the moving party satisfies this burden, "the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." Elec. Workers Pension Trust Fund, 340 F.3d at 379 (emphasis in original); see also United States v. Rylander, 460 U.S. 752, 757 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."). A contemnor arguing the impossibility of compliance has the burden of proving that "(1) it was unable to comply with the

court's order, (2) its inability to comply was not self-induced, and (3) it took all reasonable steps to comply." Gascho, 875 F.3d at 802 (punctuation modified).

To satisfy the first element, a contemnor claiming it was unable to make a court-ordered monetary payment must show "categorically and in detail why [he or she] could not pay." Elec. Workers Pension Trust Fund, 340 F.3d at 384 (punctuation modified). Evidence that might satisfy this standard includes "[d]etailed proof . . . basically focusing on itemizing income, expenses, assets, and liabilities." In re Triangle Dev., Inc., No. 99-17499, 2002 WL 31689670, at *5 (Bankr. N.D. Ohio Oct. 23, 2002).

Defendants have the initial burden of demonstrating "by clear and convincing evidence" that Paterson "knowingly violated a definite and specific order." Gascho, 875 F.3d at 800 (punctuation modified). The parties do not dispute that this standard was met when Paterson failed to timely pay sanctions in the amount of $13,506 by November 27, 2018 under this Court's November 6, 2018 order. The burden, therefore, shifts to Paterson to demonstrate that he has satisfied all three elements of the "impossibility" defense. See Gascho, 875 F.3d at 802. Paterson has not met any of the elements.

**A. Paterson fails to show that he was unable to comply with the Court's November 6, 2018 order.**

Because he has the burden of establishing that compliance with the court order was impossible, Paterson needed to come forward with a "complete financial picture" of assets, income, and expenses for the relevant time period. See In re Triangle Dev., Inc., 2002 WL 31689670, at *5. He did not do that. Mysteriously, Paterson never produced critical Chase statements. One missing statement (for the period of November 24 to December 21) embraces the November 27, 2018 due date for payment. Another statement for a period shortly before payment was ordered (September 25 to October 22) would have provided a confirmatory snapshot of the

6

flow of Paterson's funds, thereby verifying or refuting any sizeable irregular payments in or out of his account. Paterson explicitly acknowledged the importance of these statements because he promised to furnish them under seal to the Court. Pl. Resp. at 7–8. His failure to do so—and his failure to explain his failure—cements the adverse inference that the data would have undermined Paterson's claim that he could not comply with the sanctions order. In any case, his failure to establish his full financial picture "categorically and in detail" means that he has not met his burden to establish the first element of the defense. Elec. Workers Pension Trust Fund, 340 F.3d at 384 (punctuation modified).

Paterson argues that the statements he produced show that he did not have a balance equal to or greater than $13,506 until April 30, 2019. However, Paterson cannot escape his court-ordered sanctions by merely showing that his bank account did not contain the full amount due at any one time. See In re Triangle Dev., Inc., 2002 WL 31689670, at *5 (finding party in civil contempt where she "did not explain why she failed to make even partial payments under the Order, particularly when she had income"). Regardless, the missing bank statements make his argument meaningless. See Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc., No. C2-97-750, 2007 WL 9734477, at *3–4 (S.D. Ohio Nov. 6, 2007) (finding that party failed to prove "categorically and in detail" that it could not make a court-ordered payment where the party merely listed events negatively impacting its cash flow, but failed to support its arguments with evidence like bank records and affidavits) (emphasis in original). Paterson cannot satisfy his burden by relying on records that he failed to provide in full—especially since one of the missing bank statements is for the period of November 24 to December 21, 2018, which encompasses the November 27 due date for the sanctions owed.

7

Because Paterson failed to provide complete records, as well as a breakdown of his financial situation "categorically and in detail," Elec. Workers Pension Trust Fund, 340 F.3d at 384 (punctuation modified), Paterson fails to satisfy his burden of showing that he was unable to comply with the Court's November 6, 2018 order.

**B. Paterson fails to show that any inability to comply with the November 6, 2018 order was not self-induced.**

Defendants argue that to the extent that Paterson was unable to make the payments due, this inability was self-induced because Paterson arranged his billing affairs to protect himself from creditors. Paterson testified that he accounts for bills due from clients only when he "physically bill[s]" them, rather than maintaining an accounts receivable balance. Paterson Dep. at 30 (Dkt. 140-2). Defendants argue that this billing practice allows Paterson to "intentionally manipulate[]" his records "to shield Mr. Paterson's assets from creditors until such times as he needs [those assets] for emergency cash needs." Defs. Mot. at 11–12. Defendants note that Paterson's Chase statements[2] show increasing income during the first eleven months of 2018, followed by a decline beginning in December 2018, id. at 8, and then a significant rebound in the months following Paterson's May 6, 2019 payment, id. at 11. Defendants conclude that Paterson "has the ability to control how and when he receives payment from his clients for legal services." Id. at 12.[3]

---

[2] Defendants have attached Paterson's Chase statements as exhibits to their motion, grouped together in various monthly periods as follows: the statements for January 24 to August 21, 2018 (Dkt. 140-3); August 22 to September 24 and October 23 to November 23, 2018 (Dkt. 140-4); December 22, 2018 to April 19, 2019 (Dkt. 140-5); April 20 to May 21, 2019 (Dkt. 140-6); and May 22 to October 22, 2019 (Dkt. 140-7). The Court refers to these records collectively as "Paterson Chase statements."

[3] Defendants apparently look to the "Deposits and Additions" section of Paterson's Chase statements to determine his income. Compare Defs. Mot. at 7–8, with Paterson Chase statements. Paterson does not dispute the numbers Defendants cite for his non-social security income. See Pl. Resp. The Court, also looking to Paterson's "Deposits and Additions," calculates slightly different numbers than Defendants do for Paterson's income in certain months. However, Paterson's Chase statements do generally reflect the trends that Defendants observe, as reflected in the chart below.

8

Paterson responds to these accusations with silence, utterly failing to address Defendants' allegations regarding the irregularities in his billing methods.  See Pl. Resp.  Faced with this non-response, the Court draws the strong inference that there is merit to Defendants' claims—an inference sanctioned by case law.[4]  It is drawn even more persuasively here, because a lawyer would be expected to deny an accusation that he has manipulated his professional dealings so as to frustrate creditors and evade a court's order.  Silence in these circumstances—when a lawyer's rectitude is drawn into question—speaks volumes.

As for the second basis for manipulation of income, Paterson does challenge the assertion that he created any inability to pay by transferring sums to his wife, claiming that he has maintained this arrangement throughout his marriage of over 50 years.  Pl Resp. at 8.  The arrangement is not

| Period | Non-social security income | Average monthly non-social security income |
|---|---|---|
| January 24 to November 23, 2018 (excluding September 25 to October 22, 2018) (nine months) | $44,781.38 | $4,975.71 |
| December 22, 2018 to April 19, 2019 (four months) | $3,031.88 | $757.97 |
| April 20 to October 22, 2019 (six months) | $73,256.25 | $12,209.38 |

[4] In a variety of contexts, courts have construed silence by a civil litigant in the face of an argument made in the opposing party's motion as an abandonment or waiver of any challenge to it.  See, e.g., Brown v. VHS of Mich., Inc., 545 F. App'x 368, 372 (6th Cir. 2013) (holding that party abandons claim by not responding to argument made in summary judgment motion); Humphrey v. U.S. Att'y Gen.'s Off., 279 F. App'x 328, 331 (6th Cir. 2008) (holding that party waives challenge to argument made in motion to dismiss by failing to respond to it); Brown v. Gojcaj Foods, Inc., No. 09-14537, 2011 WL 1980533, at *3 (E.D. Mich. May 20, 2011) ("If a party fails to respond to an argument raised in a motion the court can assume that opposition to the motion is waived and the motion may be granted.").

a badge of fraud per se, as spouses often share income and expenses in a similar fashion. But to carry his burden of showing that any inability to pay was not self-induced, Paterson would have to show what the level of household expense was during the relevant time period when payment was due. And he would have to explain how transfers from his own income (from social security and legal work) were in amounts reasonably necessary to cover household expenses, taking into account his wife's source of income (social security).

Paterson has not done that here. The closest he comes to putting dollar figures on expenses is his testimony that his bills included rent of approximately $2,000 per month, Paterson Dep. at 10, and credit card payments of approximately "a couple hundred dollars" per month, id. at 27. According to the available statements, Paterson transferred an average of $5,048.57 per month to Mrs. Paterson between January 24, 2018 and May 21, 2019.[5] It is puzzling why Paterson would need to transfer over $5,000 monthly, on average, when household expenses were apparently less

---

[5] Based on Paterson's Chase bank statements, he made the following monthly transactions to Mrs. Paterson:

| Period | Transfers to Mrs. Paterson |
|---|---|
| January 24 to February 22, 2018 | $2,000 |
| February 23 to March 21, 2018 | $2,000 |
| March 22 to April 20, 2018 | $2,400 |
| April 21 to May 21, 2018 | $5,150 |
| May 22 to June 21, 2018 | $4,400 |
| June 22 to July 23, 2018 | $2,000 |
| July 24 to August 21, 2018 | $2,000 |
| August 22 to September 24, 2018 | $13,775 |
| September 25 to October 22, 2018 | Records not provided |
| October 23 to November 23, 2018 | $8,805 |
| November 24 to December 21, 2018 | Records not provided |
| December 22, 2018 to January 23, 2019 | $2,350 |
| January 24 to February 22, 2019 | $2,400 |
| February 23 to March 21, 2019 | $3,400 |
| March 22 to April 19, 2019 | $2,000 |
| April 20 to May 21, 2019 | $18,000 |

than 50% of that figure—especially in light of the fact that Mrs. Paterson's monthly social security would cover $700–$900 of the household expenses. Paterson Dep. at 10.

These transfers to Mrs. Paterson raise other questions. Why would Paterson transfer at least $6,505 in four separate payments—one transfer of $505 on November 13, two transfers of $2,000 each on November 19, and one transfer of $2,000 on November 20—between the November 6 order to pay sanctions and shortly before the November 27 due date for payment? See Paterson Chase statement for October 23 to November 23, 2018 (Dkt. 140-4). Why did he make significantly greater transfers in certain months (six payments totaling $13,775 between August 22 and September 24, 2018 and two payments totaling $18,000 between April 20 and May 21, 2019)? Id.

There may well be innocent explanations for the evidence showing manipulation of income that would refute any contention of self-induced inability to comply. But Paterson has not provided either explanations or evidence. Because it was his burden to do so, Paterson fails to meet the second element of the impossible-to-comply defense.

### C. Paterson fails to show that he took all reasonable steps to comply with the November 6, 2018 order.

There were relatively simple and plainly reasonable steps that Paterson could have undertaken to pay the sanctions ordered by the Court. Paterson could have billed his clients immediately when he learned that he had a court obligation to pay sanctions. He might have also attempted to modify his practice of transferring large sums of money to his wife, which apparently regularly exceeded the level of household expenses. But Paterson has been silent on whether he undertook either effort. His failure to show that he made these efforts means that he fails to establish the third element of the impossibility-to-comply defense.

### III. CONCLUSION

For the reasons set forth above, the Court finds that Paterson's conduct amounted to civil contempt, and it grants Defendants' motion for additional sanctions (Dkt. 140) to the extent that Defendants seek sanctions for all reasonable fees and costs incurred in responding to Paterson's contemptuous failure to comply with the Court's November 6, 2018 order. In granting sanctions once again against Paterson, the Court does so to compensate Defendants for losses that they incurred in responding to Paterson's failure to comply with the Court's order. The only other purpose of civil sanctions—to enforce compliance with a court order—is inapplicable, as Paterson has (although woefully late) already complied with that order.

These sanctions shall include all reasonable fees and costs incurred by Defendants in relation to: (i) their December 7, 2018 motion for an order requiring that Paterson show cause why he should not be held in contempt for failing to comply with the November 6 order; (ii) the April 11, 2019 contempt hearing; (iii) Defendants' April 29, 2019 service of discovery requests regarding Paterson's ability to pay the sanctions due under the November 6, 2018 order; (iv) Defendants' July 25, 2019 motion for discovery and for additional sanctions; (v) Defendants' March 19, 2020 preparation of discovery requests regarding Paterson's ability to pay the sanctions due under the November 6, 2018 order; (vi) Paterson's August 3, 2020 creditor examination deposition; and (vii) Defendants' present motion reporting the outcome of discovery and requesting sanctions.

On or before October 14, 2021, Defendants shall file an affidavit or declaration setting forth the fees and costs so incurred. On or before October 28, 2021, Paterson may file a response. The Court will thereafter determine whether a hearing is required or whether to issue an order for

the amount of the sanctions. By further order, the Court will address Defendants' request that disciplinary proceedings be initiated against Paterson pursuant to L.R. 83.22.

    SO ORDERED.

Dated: September 24, 2021       s/Mark A. Goldsmith
Detroit, Michigan       MARK A. GOLDSMITH
     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 24, 2021.

     s/Jennifer McCoy
     Case Manager